L GASKINS, J.
The intervenor, Morehouse General, Hospital Employee Benefit Plan (Plan), appeals from a trial court decision granting summary judgment in favor of the plaintiffs, Ronald Watters, his wife Carolyn and their daughter Caroline, and dismissing the Plan’s claim of subrogation for medical expenses for Caroline following a serious auto accident. For the following reasons, we affirm.
FACTS
On November 24, 1993, around 8:00 p.m., Caroline Watters, minor daughter of Ronald and Carolyn Watters, was a guest passenger in a Chevrolet Blazer owned by Larry A. Greenwood and operated by Kelli Lynn Coley. Ms. Coley was driving on U.S. Highway 165, about 6.4 miles north of Mer Rouge. The right tires of the vehicle went off the roadway into a pile of loose asphalt. In pulling the vehicle back onto the roadway, Ms. Coley lost control. The vehicle then went off the left side of the road and flipped over several times. Ms. Coley was killed and Caroline was severely injured. She suffered permanent brain damage and will never be able to care for herself. Upon reaching the age of majority, she was interdicted and Ronald Wat-ters was approved as curator.
Mrs. Watters was a full time employee of Morehouse General Hospital and under her health insurance, the Plan paid more than $370,000.00 in medical expenses for Caroline. The Plan sought to recover those expenses from all parties who were liable to the Watters.
In February 1995, a settlement agreement was reached between the plaintiffs, the Plan and two insurance companies, State Farm, insurer of Kelli Coley, and Farm Bureau, insurer of the owner of the vehicle. Under that agreement, the Plan received $60,000.00 in reimbursement for medical expenses rendered on behalf of Caroline. In the agreement, the Plan reserved its subrogation rights.
| ¡¿Prior to the settlement with State Farm and Farm Bureau, the Watters had filed the present suit against the State, Department of Transportation and Development, and General Motors Corporation (GMC), the maker of the vehicle. They continued with this suit after the settlement with the other parties. The Plan filed a petition of intervention to recoup the medical expenses not otherwise recovered. The Watters then dismissed their claims against GMC and reached a settlement agreement with the state, which was paid through the state’s Office of Risk Management (ORM).
On November 10,1999, the Watters filed a motion for summary judgment to dismiss the Plan’s petition of intervention. They argued that the insurance policy in effect at the time of the accident provided that the Plan was entitled to reimbursement or subrogation only against a negligent party’s liability insurer. The plaintiffs argue' that the state and its ORM are not insurance companies. Therefore, the Plan had no right of reimbursement or subrogation from the settlement made with the state.
A hearing on the motion for summary judgment was held on December 10, 1999. Even though the Plan had received $60,000.00 after the settlement with State Farm and Farm Bureau insurance companies, it argued that it is entitled to receive money from any insurance plan that might *736 pay the Watters. The Plan contended that the state is self-insured, and therefore, the ORM is essentially an insurance company. The Plan also asserted that the terms of the reservation of subrogation rights in the settlement agreement with State Farm and Farm Bureau apply to any party that may pay proceeds of any kind to the Watters as a result of a settlement or judgment in this litigation, regardless of whether it is an insurer. Finally, the Plan argues that it is an entity of the state and it cannot enter into an agreement foregoing subrogation because that would result in a prohibited donation of public funds to private individuals.
|3On December 22, 1999, the trial court signed a summary judgment in favor of the plaintiffs, rejecting the Plan’s arguments. In reasons for judgment, the court found that the Plan is not entitled to recover any funds received by the plaintiffs from the state. The court found that the state is self-insured for certain risks but that the ORM is not a liability insurer under the laws of this state. Therefore, under the medical insurance policy with Mrs. Watters, the Plan is not entitled to subrogation from the proceeds of the settlement with the state. The court also found that the first settlement agreement with State Farm and Farm Bureau, by which the Plan purported to reserve its rights of subrogation, did not expand the rights of the Plan beyond the scope of the policy language. The court further ruled that the denial of the Plan’s right of subro-gation does not lead to an unconstitutional donation of funds of a political subdivision. The Plan appealed devolutively, arguing that the trial court erred in granting summary judgment in favor of the plaintiffs.
SUMMARY JUDGMENT
Summary judgments are subject to de novo review under the same criteria applicable to the district court’s considerations of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment should be granted if the pleadings, deposition, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Mixon v. Progressive Specialty Co., 29,698 (La.App.2d Cir.6/18/97), 697 So.2d 662.
Where the moving party will not bear the burden of proof at trial on the matter before the court on summary judgment, La. C.C.P. art. 966 requires only that the moving party point out that there is an absence of factual support for one |4or more of the essential elements to the adverse party’s claim, action, or defense. If the nonmoving party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2); Berzas v. OXY USA, Inc., 29,835 (La.App.2d Cir.9/24/97), 699 So.2d 1149.
Further, La. C.C.P. art. 967 provides that when a motion for summary judgment is made and supported as provided above, an adverse party may not rest on his pleadings, but his responses, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967. Holloway v. Midland Risk Insurance Company, 33,026 (La.App.2d Cir.5/15/00), 759 So.2d 309.
RIGHT TO SUBROGATION
On appeal, the Plan argues that the trial court erred in finding that it was not entitled to subrogation from the settlement between the state and the plaintiffs, for the unreimbursed medical expenses expended on behalf of Caroline Watters. The Plan contends that under the terms of *737 the medical insurance contract with Mrs. Watters, and under its reservation of sub-rogation rights in the settlement with the insurance companies, it is entitled to reimbursement for uncompensated medical expenses. These arguments are without merit.
Regarding subrogation, although a person pays another’s debt, that person does not acquire automatically the right to step into the shoes of the creditor and thereby insist that the debtor reimburse him for satisfying the debt, unless such right is acquired by conventional or legal subrogation. Martin v. Louisiana Farm Bureau Casualty Insurance Company, 628 So.2d 1213 (La.App. 3d Cir.1993), affirmed, 94-0069 (La.7/5/94), 638 So.2d 1067. Subrogation is the substitution of one person to the rights of another. La. C.C. art.. 1825. The Louisiana Civil Code ^provides that subrogation takes place only by written contract executed between the parties or by operation of law under certain limited conditions. Martin v. Louisiana Farm Bureau Casualty Insurance Company, supra. In the absence of a provision in the policy granting subrogation to the insurer, the insured may collect from a third party tort-feasor and retain everything he has been paid by the insurer. Poche v. City of New Orleans, 518 So.2d 1137 (La.App. 4th Cir.1987), writ denied, 521 So.2d 1173 (La.1988). In this state, health insurers who pay claims on behalf of insureds are not entitled to legal subrogation. They may be entitled to conventional subrogation if provided in the contract of insurance. Martin v. Louisiana Farm Bureau Casualty Insurance Company, supra.
In the present case, the Plan’s right of conventional subrogation is based upon the following provision of the insurance contract with Mrs. Watters:
If any covered person is injured, off the job, because of the negligence of another person this Plan will pay any resulting medical expense as outlined above. The Plan will then subrogate against the other person’s liability insurance in order to be reimbursed for the expenses paid. The covered person must agree to this subrogation in order to receive benefits. [Emphasis supplied.]
The Plan argues that, because the state was a self-insured entity and operated the ORM, through which it paid the settlement to the plaintiffs in this case, the ORM is a liability insurer. Accordingly, the Plan claims the settlement was “liability insurance” as contemplated by the terms of Mrs. Watters’ employee benefits plan, and the Plan would be entitled to subrogation from the settlement proceeds with the state. The Plan cites La. R.S. 39:1535, 39:1536 and 39:1536.1 in support of its argument. The Plan asserts that the duties of the ORM and its assessment of premiums to state agencies, spelled out in the cited statutes, makes it an insurer. The Plan also cites Williams v. Leonard Chabert Medical Center, 98-1029 (La.App. 1st Cir. 9/26/99), 744 So.2d 206, writ denied, 2000-0011 (La.2/18/00), 754 So.2d 974, in which the ORM is discussed as an insurance company | fiand Belt v. State, Through Louisiana Board of Cosmetology, Commerce Department, 493 So.2d 278 (La.App.3d Cir.1986), writ denied, 496 So.2d 1044 (La.1986), in which the ORM is described as an ancillary agency of the state that functions as an insurance company. However, the trial court was correct in finding that the arguments and authority cited by the Plan on this issue are not persuasive.
As noted by the trial court, entities of the state such as the ORM are specifically excluded from the statutory definition of insurance. La. R.S. 22:5(9)(a) provides:
“Insurance” is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies. It shall include any trust, plan or agreement, popularly known as employee benefit trusts, not specifically exempted from state regulation under Public Law 93-406, except collectively bargained union welfare *738 plans, single employer plans, or plans of the state or political subdivisions. [Emphasis supplied.]
The medical insurance policy between the Plan and Mrs. Watters provides only a right of subrogation against a liability insurer. Even if it can be said that the ORM operates as an insurance agency, it is a “plan of the state.” Therefore, it is statutorily excluded from the definition of an “insurer.” Under the terms of the policy, the Plan does not have a right of subrogation against the ORM. We also note that the policy was authored by the Plan and any ambiguity that may exist concerning the meaning of the policy is to be construed in favor of the insured and against the insurer. Pareti v. Sentry Indemnity Company, 586 So.2d 417 (La.1988). Accordingly, the trial court did not err in finding that the Plan’s right of sub-rogation under the terms of the insurance contract with Mrs. Watters included only liability insurers and does not extend to the settlement with the state and the ORM.
Even though we find that the Plan was not entitled to subrogation against the ORM under the provisions of the health insurance policy with the plaintiffs, the Plan also asserts that it obtained the right to subrogation under the terms of the |7settlement agreement among the plaintiffs, the Plan, State Farm, and Farm Bureau. The Plan claims that it reserved a right of subrogation against any party who settled with the plaintiffs, regardless of whether it is a liability insurer. Regarding subrogation, the Plan cites the relevant provisions of the first settlement agreement:
The payment of sums to Morehouse by Farm Bureau and State Farm and through Watters shall in no way prejudice the right of Morehouse to make claim for additional reimbursement and/or subrogation or of its rights to file an intervention in any lawsuit or a lien against any additional proceeds or funds received or claimed by Watters whether in [the present suit] or in any other litigation nor shall it prejudice the right of Watters to defend any such action filed on behalf of Morehouse and to allege that it is not entitled to any subro-gation, reimbursement or other funds in any fashion should Watters receive any other funds through litigation, compromise or otherwise arising out of the claim for injuries to Caroline Elizabeth Watters from the above described accident.
Further, paragraph 4G states:
Morehouse shall pay all claims payable under the Morehouse General Hospital Employee Benefits Plan for and on behalf of Caroline Elizabeth Watters subject to the deductibles, co-insurance and other provisions of the plan, reserving its right to seek reimbursement, subro-gation, and/or other reimbursement for said payments in the above referenced civil action and/or against any other parties who may be liable to Watters, except State Farm, Farm Bureau or their insureds.
These provisions are not in the nature of an agreement that the Plan is entitled to additional reimbursement beyond what it received in the settlement with the insurance companies or beyond the rights granted in the health insurance policy. It merely reserves the Plan’s right to make a claim for additional reimbursement and it also reserves the Watters’ right to oppose the claim. The trial court correctly found that the settlement agreement among the plaintiffs, the Plan, State Farm, and Farm Bureau did not expand the rights of the Plan beyond those contained in the contract of insurance with Mrs. Watters. The reservation of subrogation rights set forth above did not expand those rights in any way, but merely reserved the right existing under the health insurance policy. Therefore, |8the trial court did not err in concluding that the plan was not entitled, as a matter of law, to reimbursement from the proceeds of the plaintiffs’ settlement *739 with the state and the ORM by virtue of the settlement provisions with the insurance companies.
DONATION OF A PUBLIC THING
The Plan asserts that any provision in its insurance agreement with Mrs. Wat-ters in the February 1995 settlement with the insurance companies which would prohibit the Plan from seeking subrogation would cause a donation of a public thing in violation of Art. VII § 14 of the Louisiana Constitution[1] and would be against public policy and unenforceable. The Plan contends that Morehouse General Hospital is a political subdivision of the state. It argues that the trial court’s ruling that the Plan does not have the right of recovery by subrogation where the plaintiffs are receiving a multimillion dollar settlement from the state results in the donation of Plan funds for the private benefit of the plaintiffs, providing them with a substantial windfall.
We find, as did the trial court, that no donation occurred in this case. The trial court noted that a contract of insurance existed between the Plan and Mrs. Wat-ters. Under La. C.C. art. 1912, such a contract is aleatory, i.e., because of the nature of the contract or according to the parties’ intent, the performance of either party’s obligation, or the extent of the performance depends upon an uncertain event. The Watters paid premiums to the Plan for health insurance and the Plan agreed to pay, within the terms of the contract, medical expenses for the plaintiffs in the event they became ill or suffered injury. When Caroline was injured, the 18Plan was bound by its contract to pay her medical expenses. The trial court was correct in finding that no donation of public funds occurred in this case.
CONCLUSION
For the reasons stated above, we affirm the tri,al court ruling granting summary judgment in favor of the plaintiffs, Ronald Watters, Caroline Watters and Carolyn Watters, dismissing the petition of intervention of the Morehouse General Hospital Benefit Plan. Costs in this court are assessed in accordance with law against the Morehouse General Hospital Plan.
AFFIRMED.

. La. Const. Art. VII § 14 provides:
Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.