CRAIN, J.
12Parla L. D’Amico appeals a judgment from a concursus proceeding, which divided an attorney fee earned in connection with the settlement of an underlying personal injury suit. We affirm.
FACTS
Laurence Gillio sustained serious personal injuries in a motor vehicle accident on April 24, 2009. He retained his wife, Carole Gillio, and the Gillio Law Firm, APLC, on a contingency fee basis to represent him in his suit for damages. Soon after suit was filed, Laurence entered a contingency fee contract with additional *591 counsel Darla D’Amico, Frank D’Amico,[1] and Frank J. D’Amico, A Professional Law Corporation. In 2012, Laurence terminated the services of the D’Amicos and retained attorneys G. Brice Jones, Ross F. La-garde, and Paul D. Hesse, of the Jones Lagarde, LLC law firm on a contingency fee basis. Carole, Darla, Frank, and the D’Amico,law firm intervened in the personal injury proceedings to recover their respective shares of any attorney fees.
The personal injury suit was settled for $1,900,000 and the settlement funds were deposited into the registry of the court. Jones Lagarde filed a eoncursus petition to obtain a division of the attorney fee. After a trial, the trial court enforced Carole’s original 40% contingency fee contract, awarded a total attorney fee of $760,000, and found that Darla was terminated for cause. The trial court then awarded Jones Lagarde $633,270, plus stipulated expenses, reflecting a 33 1/3% fee based on the Jones Lagarde contingency contract. The remaining attorney fee of $126,730 was divided between Carole and the D’Am-ico firm, with 60% being awarded to Carole and 40% to the D’Amico Arm. Carole’s award ^totaled $76,038, plus stipulated expenses. The D’Amico firm’s $50,692 share was divided evenly between Darla and Frank.
Darla appeals, contending that the trial court erred in finding that she was discharged for cause and abused its discretion in awarding her a $25,346 attorney fee. She also challenges the award to Frank, arguing that he is entitled to nothing. Finally, she contends that the trial court erred in failing to award her stipulated expenses.[2]
DISCUSSION[3]
A client has an absolute right to discharge his attorney at any time, with or *592 without cause, subject to liability for payment of a reasonable attorney fee. See In re Jones, 02-3131 (La. 10/21/03), 859 So.2d 666, 670; Succession of Wallace, 574 So.2d 348, 351-52 (La. 1991); Francis v. Hotard, 00-0302 (La.App. 1 Cir. 3/30/01), 798 So.2d 982, 985. A client who retains successive attorneys pursuant to contingency fee contracts owes only one contingency fee, determined according to the highest ethical percentage agreed to by the client in any of the contingency fee contracts executed, which is then allocated among the various attorneys. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 118 (La. 1978) (on rehearing). Factors to guide the allocation of fees between discharged and subsequent attorneys are set forth in Rule 1.5 of the Code of Professional Responsibility as follows:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation and ability of the lawyer or lawyers performing the services; '
(8) whether the fee is fixed or contingent.
See Saucier, 373 So.2d at 116. If an attorney is discharged for cause, “the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the Saucier allocation.” O’Rourke v. Cairns, 683 So.2d 697, 704 (La. 1996). The trial court has great discretion in setting an attorney fee, and its award will not be disturbed on appeal absent a showing of an abuse of discretion. In re Succession of Bankston, 02-0548 (La.App. 1 Cir. 2/14/03), 844 So.2d 61, 64, writ denied, 03-0710 (La. 5/9/03), 843 So.2d 400.
The testimony at the concursus trial established that Laurence’s case was complex. The accident occurred on Gause Boulevard in Slidell, a four-lane roadway, as Gillio was driving westbound in the right hand lane. A beer truck was also traveling westbound and attempted to turn right into a narrow driveway, resulting in a collision with Laurence’s vehicle. Carole arrived at the scene soon after the accident, took photographs, and witnessed the driver of the beer truck speaking to an alleged witness about what happened. Being suspicious, she hired an accident scene investigation expert who preserved critical evidence of the scene. Because of conflicting stories as to how the accident happened, the driver of the beer truck was not ticketed.
*593 Carole, on behalf of her husband, filed suit for damages, and later amended it to add her consortium claim. Approximately fifteen months after the accident, Darla was retained as co-counsel. Darla testified that she filed a supplemental and amending petition; Carole testified that she prepared discovery requests and interrogatories, which Darla reviewed. Laurence prepared chronologies and gathered medical data. Darla testified that she had lengthy meetings with Laurence and conducted extensive legal research regarding his medical issues.
Carole and Darla did not take any depositions, but attended Laurence’s deposition. Darla testified that she spent three days preparing for Laurence’s deposition. Darla claimed to have worked steadily with Carole, but did not keep time sheets reflecting her billable hours. She estimated that she spent 625 to 700 hours working on the case, including time spent on her attorney fee intervention.
Jones Lagarde entered the case in April 2012, approximately three years after the accident, and received two boxes of file material from the D’Amico law |f,firm. No settlement offers were outstanding at that time. A mediation in December 2012, resulted in a settlement offer of $100,000.
Brice Jones testified that he conducted discovery, including taking twenty-three depositions related to liability and medical issues. He explained that the files he received from the D’Amico law firm contained incomplete medical records and little usable data. Jones testified that his office worked with the insurance companies to obtain a complete medical record, which ultimately involved contact with sixty-seven different medical providers. Jones Lagarde developed a file consisting of eighteen boxes of documents with two hundred fourteen subfiles, including sixty-seven from the medical providers.
The beer truck driver had been fired by the company he was driving for at the time of the accident, so Jones hired a private investigator to find him and serve him with suit papers. Jones explained that during the course of discovery, his firm learned that the driver of the beer truck was a reserve police officer who had complaints made against him. He subpoenaed the driver’s supervisor to have him testify relative to the driver’s character and credibility. Jones testified that he was able to get the truck driver and the eyewitness, who he got to contradict his previous statement, to admit that the beer truck was not moved after the accident. The police officer at the accident scene confirmed that fact. Jones testified that the admissions of these witnesses were critical because he was then able to use photographs taken by Carole and the evidence preserved by the accident investigation expert to establish that the beer truck was entirely in the left lane of the two westbound lanes when it began its right turn into the driveway, thus causing the collision with Laurence. According to Carole, who was accepted by the trial court as an expert attorney, it was Jones Lagarde’s representation that ultimately resulted in the $1,900,000 settlement.
|7Having considered the Saucier factors, we find no error in the trial court’s apportionment of the attorney fee. Al though Darla testified that Laurence’s case was “high maintenance” and that she spent hours meeting with Laurence, the record supports the trial court’s conclusion that the substantial settlement that was recovered was directly attributable to the work performed by Jones Lagarde. In contrast, Darla’s estimate of the time she spent working on the file was called into question by other testimony, as well as the state of the file when it was produced to Jones Lagarde.
*594 Darla also contends the trial court erred in finding that she was terminated for cause. Although the trial court did make that finding, it allocated the attorney fee based on the relevant Saucier factors, without reducing the allocation to the D’Amico firm for Darla’s discharge for cause. See O’Rourke, 683 So.2d at 704. Consequently, we need not address the termination for cause issue. See Richardson v. Bridgefield Cas. Ins. Co., 14-1587 (La.App. 1 Cir. 8/10/15), 181 So.3d 61, 68 (recognizing that appellate courts review judgments, not reasons for judgments).
Darla next challenges the trial court’s determination that Laurence employed both her and her father, Frank, as well as the decision to split their attorney fee equally between them. Darla claims that Frank performed no work on the case and should earn no fee. Frank argued that he and Darla were de facto partners, making it proper to split the attorney fee equally.
According to Laurence’s contingency fee contract, he retained “Frank J. D’Amico, Darla L. D’Amico, and Frank J. D’Amico, A Professional Law Corporation” as his attorneys. Although Darla enrolled as counsel of record, her motion to enroll was submitted by Frank J. D’Amico, A Professional Law Corporation, with the names of both Darla and Frank appearing under the signature 1 8line. The evidence also includes letters signed by Darla on the D’Amico law firm letterhead, which lists both Frank J. D’Amico and Darla D’Amico as attorneys.
Darla testified that she started working for her father while in high school and continued after she graduated law school in 1989, until November of 2013, after she was terminated from Laurence’s case. Darla explained that although she had no employment contract, and for decades did the majority of the work, she and Frank operated under a verbal agreement to split attorney fees equally. Frank paid all overhead, including Darla’s malpractice premiums, until she was terminated.
Evidence was also presented of a similar attorney fee dispute between Darla and Frank from the federal district court. In written reasons in that case, the magistrate judge explained that Darla had argued that she and her father created a joint venture under Louisiana law, which entitled her to at least 50% of the disputed attorney fee, although she sought more based on the work she had done. Finding none of the Saucier factors merited a different result, and no need to upset their customary fee-splitting practice, the magistrate judge recommended an equal split of the attorney fee.
Frank did not testify at the concursus trial. Although he was present, his attorney called other witnesses and presented evidence in support of his claim. At the conclusion of her presentation of evidence, Frank’s attorney submitted his case without Frank testifying, explaining, “out of fairness to my client, at this point, I’m going to suspend our case. I just don’t think he can take any more of this. And he agrees with me.” Darla attempted to call Frank under cross-examination, but the trial court denied her request. The trial then concluded.
Darla argues that the trial court’s refusal to allow her to call and cross-examine Frank was reversible error, however, the record does not reflect that Frank was subpoenaed for trial. His testimony, in any form, was never admitted into evidence. Instead, he submitted his claim without presenting his own testimony—Isa strategic decision that carried the risk of whether he would meet his burden of proof. Then, after noting the late hour several times, the trial court declined Darla’s request to call and cross-examine Frank. Darla was, however, afforded the *595 opportunity to cross-examine every witness who actually testified.
The trial court is vested with great discretion in controlling the conduct of trial and the presentation of evidence. See La. Code Civ. Pro. arts. 1631 and 1632; Shexnayder v. Bridges, 15-0786 (La.App. 1 Cir. 2/26/16), 190 So.3d 764, 772. Louisiana Code of Evidence article 103A provides that error may not be predicated upon a ruling admitting or excluding evidence unless a substantial right of the party is affected. Reversal by an appellate court is not warranted unless the particular ruling complained of was erroneous and the error prejudiced the complainant’s cause. Maddox v. Bailey, 13-0564 (La.App. 1 Cir. 5/19/14), 146 So.3d 590, 594. We find no abuse of the trial court’s great discretion in ruling that Frank was not required to testify.
We also find no error in the decision to split the attorney fee equally between Darla and Frank. The record establishes that Darla and Frank were engaged in a joint venture throughout their involvement in this case. Although Darla claims that Frank performed no legal work on the case, conflicting testimony was presented through employees of the D’Amico’s firm. Tammy Minor, a legal secretary for Frank, testified that Frank discussed the ease with Darla, assisted her, performed research at the Louisiana Supreme Court’s law library, and provided direction with regard to the case. Ashley Springmann, a legal assistant for the D’Amico firm, testified that in general, Frank directed the work in the office and spent a great deal of time conducting research at the law library. The record reasonably supports the trial court’s equal division of the fee between Darla and Frank.
ImFinally, Darla argues that the trial court erred when it failed to award her stipulated expenses, contending that the trial court awarded stipulated expenses to the other attorneys involved. She asserts that the parties stipulated that her expenses were $1,756.49, but the trial court, without justification, failed to include them in her award. She also seeks $4,870.55 for her appeal costs.
At the beginning of the concursus trial, the parties stipulated to outstanding “file expenses” of $71,612.07 by Jones Lagarde, $26,848.45 by the Gillio law firm, and $2,853.09 by the D’Amicos, which were awarded to Frank. After Darla represented that she incurred $1,756.49 for her intervention to recover her attorney fee, it was clarified that the stipulated expenses did not include any intervention costs. Contrary to Darla’s arguments on appeal, the trial court did not award any party their costs associated with the concursus proceeding as part of their expenses, instead ordering each party to bear their own costs.
The trial court may render judgment for costs, or any part thereof, as it may consider equitable, and its assessment of costs will not be reversed on appeal in the absence of an abuse of discretion. La. Code Civ. Pro. art. 1920; Glencoe Educ. Foundation, Inc. v. Clerk of Court and Recorder of Mortgages for Parish of St. Mary, 10-1872 (La.App. 1 Cir. 5/6/11), 65 So.3d 225, 234-35, writ denied, 11-1142 (La. 10/21/11), 73 So.3d 383. The assessment of costs in a concursus proceeding is governed by Louisiana Code of Civil Procedure article 4659, which provides:
When money has been deposited into the registry of the court by the plaintiff, neither he nor any other party shall be required to pay any of the costs of the proceeding as they accrue, but these shall be deducted from the money on deposit. The court may award the successful claimant judgment for the costs *596 of the proceeding which have been deducted from the money on deposit, or any portion thereof, against any other claimant who contested his right thereto, as in its judgment may be considered equitable.
In all other instances, the court may render judgment for costs as it considers equitable.
|nDarla presented no evidence that she was required to pay costs of the concursus proceeding in violation of Article 4659. She also presented no evidence to substantiate her claim that she is entitled to $1,756.49 in connection with her intervention to recover an attorney fee. Based on the record before us, the trial court did not abuse its discretion in refusing to award $1,756.49 to Darla.
CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to Darla L. D’Amico.
MOTION TO STRIKE DENIED; EXCEPTION DISMISSED; JUDGMENT AFFIRMED.

. The record establishes that Frank X D’Ami-co is actually Frank J. D'Amico Sr.; however, we refer to him as Frank X D’Amico, according to the language of the contract for legal representation.

. Frank and Frank D'Amico, APLC, have filed an appellate brief listing assignments of error, which generally echo those urged by Darla, and seek an increase in the attorney fee. Because Frank and Frank D’Amico, APLC neither filed their own appeal, nor answered Darla’s appeal, Darla filed an ex parte motion to strike their brief. To obtain a beneficial modification of the trial court’s judgment, a party must either appeal independently or answer another party’s appeal. See La. Code Civ. Pro. art. 2133; In re Succession of Seal, 15-0855 (La.App. 1 Cir. 12/23/15), 185 So.3d 791, 793 n.2. Frank and Frank D’Amico, APLC have not appealed or filed an answer to Darla’s appeal. We deny the motion to strike, but consider the brief as one filed by an appellee, and will not address the assignments of error raised therein.
In response to Darla’s motion, Frank and Frank D'Amico, APLC filed an exception of no right of action, arguing that Darla’s “lot is cast with [Frank's,]” and Darla has no right to dismiss or strike their brief. Because we have denied the motion to strike, the exception is dismissed as moot. Frank and Frank D’Amico, APLC, also seek sanctions for frivolous appeal. However, since they have not appealed or answered the appeal, their request is not properly before this court and will not be considered. See St. Philip v. Montalbano, 16-0254 (La.App. 1 Cir. 10/31/16), 206 So.3d 909, 916, 2016 WL 6426467. Finally, Frank and Frank D’Amico, APLC seek sanctions against Darla pursuant to Louisiana Code of Civil Procedure article 863. However, the ability to impose Article 863 sanctions is limited to the trial court; we cannot address such a request on appeal. Trahan v. Trahan, 16-0108 (La.App. 1 Cir. 9/16/16), 203 So.3d 447, 454.

.This court granted Darla leave to file and attach exhibits to each of the briefs that she filed in response to the briefs of the appellees, However, as an appellate court, our judgment must be rendered upon the record on appeal. La. Code Civ. Pro. art. 2164. We have no jurisdiction to review evidence that is not in the record on appeal, and we cannot receive *592 new evidence. Neimann v. Crosby Development Co., L.L.C., 11-1337 (La.App. 1 Cir. 5/3/12), 92 So.3d 1039, 1044. Appellate briefs are not part of the record, and an appellate court has no authority to consider on appeal facts referred to in such briefs, or in exhibits containing matters that are not in the pleadings or evidence, as they are outside the record. Niemann, 92 So.3d at 1045. Thus, although Darla was granted leave to attach the exhibits to her brief, we have no authority to consider any of those exhibits that were not filed into the record below as evidence. See Id.