THERIOT, J.
lain this appeal, the plaintiff-appellant, Old Republic Life Insurance Company (“Old Republic”), challenges the trial court’s judgment sustaining a peremptory exception of no right of action and ordering the dismissal, with prejudice, of Old Republic’s claims against the defendants-appellees, TransWood, Inc. and Trans-Wood Logistics, Inc. (“TransWood”), Tut-hill Corporation (“Tuthill”), Axiall, LLC, f/k/a Georgia Gulf Chemicals & Vinyls, LLC (“Axiall”), Muncie Power Products, Inc. (“Muncie”), and DXP Enterprises, Inc. (“DXP”). For the following reasons, we maintain the appeal, affirm the trial court’s revised judgment sustaining the exception of no right of action, and grant the answer to the appeal.
FACTS AND PROCEDURAL BACKGROUND
The factual background of this case is not currently in dispute. In January of 2013, an independent professional truck driver, Vincent G. Johnson,[1] was seriously injured in a catastrophic accident that occurred at Axiall’s chemical manufacturing facility located in Plaquemine, Louisiana. Mr. Johnson was injured at Axiall’s facility while unloading powdered lime from his 2005 International 94001 eighteen-wheeler. Mr. Johnson’s eighteen-wheeler was equipped with a power takeoff unit and rotary displacement blower used to offload shipments. Mr. Johnson became entangled in his eighteen-wheeler’s offloading system equipment, which resulted in significant bodily injuries. It is uncontested that Mr. Johnson ultimately died from his injuries after the institution of this lawsuit.
|40n December 30, 2013, Old Republic filed suit against several named defendants, including TransWood, Tuthill, and Axiall.[2] Through amended and supplemental pleadings, Muncie and DXP were later named as additional defendants. Old Republic alleged that after the accident, it was forced to make certain insurance payments to its insured, Mr. Johnson, pursuant to the terms of an occupational accident coverage insurance policy bearing policy number ORL01132I. Old Republic claimed the accident and resulting injuries to its insured were caused by the fault of the defendants, which it alleged, inter alia, failed to provide a safe work environment and/or improperly manufactured and/or installed the offloading system equipment onto Mr. Johnson’s eighteen-wheeler.
On July 1, 2015, following various matters not at issue on appeal, TransWood filed a peremptory exception of no right of action. TransWood submitted that Old Republic had no right of action against it, arguing that Old Republic did not enjoy a right of action as the conventional or legal subrogee of its insured. TransWood sought that the exception be sustained and the petition be dismissed. In the alternative, *1000 TransWood requested that the suit be stayed pending resolution of. Mr. Johnson’s federal lawsuit against the defendants. Old Republic opposed the motion.
On July 28, 2015, Axiall filed a motion adopting and joining in TransWood’s peremptory exception of no right of action.
On August 12, 2015, the exception of no right of action came before the trial court for a hearing. TransWood, Tuthill, Muncie, Axiall, and. Old Republic all made appearances at the hearing, Following arguments on the matter, the trial court orally sustained the exception of no right of action and [ ^declined to rule upon the alternative request for a stay. The trial court directed counsel for TransWood to prepare a final judgment.
On August 31, 2015, the trial court signed a written judgment in accordance with its oral ruling on the exception of no right of action that contained the following decretal language:
IT IS ORDERED, ADJUDGED, AND DECREED there be judgment in favor of TransWood, Inc., TransWood Logistics, Inc., and Axiall LLC and against Old Republic Life Insurance Company GRANTING the exception of no right of action filed by TransWood, Inc. and TransWood Logistics, Inc. and dismissing with prejudice all claims asserted by Old Republic Life Insurance Company against all parties....
Old Republic filed an appeal from this judgment. TransWood answered the appeal.[3]
ASSIGNMENTS OF ERROR
Old Republic raises the following assignments of error:
1. The trial court erred by granting the peremptory exception of no right of action, finding that Old Republic lacked a right of action through conventional subrogation.
2. The. trial court erred by granting the peremptory exception of no right of action, finding that Old Republic ' lacked a right of action through legal subrogation.
LAW AND DISCUSSION

Rule to Show Cause

Initially, before we can consider the merits of this appeal, we must dispose of the rule to show cause order issued by this court, ex propño motu, on May 26,' 2016. The rule to show cause order noted that the trial court’s August 31, 2015 judgment appeared unclear and lacked the specificity required by law; the rule to show cause order further noted that the appeal | ^appeared premature based upon a pending motion for new trial filed by Old Republic. The parties were directed to show cause as to whether or not-the appeal should- be dismissed for these reasons. On November 7, 2016, the rule to show cause order was' referred to the panel to which the merits of the appeal were assigned.
Prematurity of Appeal
It is well-settled under Louisiana law that an appeal taken while a timely filed motion for new trial or request for rehearing is pending is premature and subject to dismissal, because the filing of a *1001 motion for new trial suspends the operation of the final judgment being appealed. See La. C.C.P. arts. 2087(D) and 2123(C); Crescent Real Estate Equities/1100 Poydras v. Louisiana Tax Comm’n, 01-1434 (La.App. 1 Cir. 9/28/01), 809 So.2d 394, 396.
In the case before us, the record reflects that, on September 2, 2015, Old Republic timely filed a motion for new trial from the trial court’s August 31, 2015 judgment sustaining the exception of no right of action. The trial court set the motion for new trial for a hearing, but never held a hearing on the motion. In addition, several of the defendants began to pursue discovery regarding some of the documents that had been attached to the motion for new trial, but these discovery matters were never acted upon, and Old Republic later filed unopposed motions to quash the responsive discovery.[4] On October 20, 2015, Old Republic filed a motion and order for devolutive appeal. The trial court signed the order granting Old Republic an appeal on that same day.
|7In response to the rule to show cause order issued by this court on May 26, 2016, Old Republic filed a reply brief wherein it claimed to have withdrawn its motion for new trial prior to entry of the order of appeal. Old Republic specifically claimed it withdrew its motion for new trial and removed the matter from the docket of the trial court by sending a letter of withdrawal, through counsel, to the trial court and to all parties and counsel of record. Old Republic attached a copy of the purported letter of withdrawal to its reply brief. The letter, which is dated October 20, 2015, states: “This serves to withdraw Old Republic Life Insurance Company’s Motion for New Trial and to respectfully request that this matter be removed from the docket....”
None of the defendants dispute that Old Republic withdrew its motion for new trial prior to entry of the order of appeal. Furthermore, the record certified for purposes of appeal does contain a subsequent oral representation from counsel for Old Republic tending to establish that it timely withdrew its motion for new trial.[5] Nevertheless, the original record does not contain a copy of the purported letter of withdrawal itself. It is well-settled that, as an appellate court, our judgment must be rendered “upon the record on appeal.” La. C.C.P. art. 2164. We have no jurisdiction to review evidence that is not in the record on appeal, and we cannot receive new evidence. Gillio v. Hanover Am. Ins. Co., 16-0640 (La.App. 1 Cir. 1/31/17), 212 So.3d 588, 591 n.3. Appellate briefs are not part of the record, and we have no authority to consider facts referred to in such briefs, or in exhibits containing matters that are not in the pleadings or evidence, since they are outside of the record. Id.
| sAccordingly, on March 13, 2017, in order to settle any uncertainty pertaining to the effectiveness of Old Republic’s purported withdrawal of its motion for new trial, this court issued a rule to show cause order to the clerk of court for the trial court, ordering it to supplement the record with “[a]ny evidence ... tending to estab *1002 lish that [Old Republic] withdrew its motion for new trial prior to entry of the order of appeal....” In response thereto, the clerk of court for the trial court supplemented the record on appeal with a copy of the aforementioned letter of withdrawal. The letter of withdrawal is stamped “FILED 2015 OCT 20.” As supplemented, the record on appeal is sufficient to confirm that Old Republic timely withdrew its motion for new trial prior to entry of the order of appeal. Thus, we find that the order of appeal was not premature as per La. C.C.P. art. 2087(D).
Specificity of Decretal Language
Having found that this appeal is not subject to dismissal on grounds of prematurity, we next turn to address the validity and finality of the trial court’s August 31, 2015 judgment sustaining the exception of no right of action. Louisiana Code of Civil Procedure art. 1841 defines a judgment as the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. A judgment may be interlocutory or final; a judgment which does not determine the merits but only preliminary matters in the course of an action is an interlocutory judgment, whereas a judgment that determines the merits in whole or in part is a final judgment. La. C.C.P. art. 1841. The appellate jurisdiction of this court extends to final judgments. See La. C.C.P. art. 2083; Kelly v. Kelly, 16-0206 (La.App. 1 Cir. 10/31/16), — So.3d -, -, 2016 WL 6534299.
Louisiana Code of Civil Procedure art. 1918 states that “[a] final judgment shall be identified as such by appropriate language.” Although the | ¿form and wording of judgments are not sacramental, a valid final judgment must be “precise, definite, and certain.” Texas Gas Exploration Corp. v. Lafourche Realty Co., Inc., 11-0520 (La.App. 1 Cir. 11/9/11), 79 So.3d 1054, 1062, writ denied, 12-0360 (La. 4/9/12), 85 So.3d 698 (citing Laird v. St. Tammany Parish Safe Harbor, 02-0045 (La.App. 1 Cir. 12/20/02), 836 So.2d 364, 365). In the absence of proper decretal language, the judgment is defective and this court lacks jurisdiction to review the merits of the appeal. Texas Gas Exploration Corp., 79 So.3d at 1062.
In the case at bar, we find that the trial court’s August 31, 2015 judgment is fatally defective due to its unclear and non-specific decretal language. The judgment purports to enter judgment in favor of only certain defendants, i.e., TransWood and Axiall. However, the judgment also identifies the other defendants that made appearances at the hearing on the exception and purports to order the dismissal of “all claims” brought by Old Republic against “all parties.” The non-specific de-cretal language of the trial court’s August 31, 2015 judgment makes it impossible to determine in whose favor the judgment is rendered without reference to the trial court’s oral ruling. Insofar as it must be evident in whose favor the judgment is rendered from the face of the ruling, without reference to other documents in the record, see Laird, 836 So.2d at 366, the trial court’s original judgment lacks the necessary decretal language and does not constitute a valid, final judgment over which our appellate jurisdiction extends.
Nevertheless, we find that we do retain jurisdiction over this appeal, because the trial court corrected the deficiencies in the original judgment through its rendition of a revised judgment signed after the issuance of the |inrule to show cause order by this court on August 29, 2016.[6] The revised judgment contains the following decretal language:
*1003 IT IS ORDERED, ADJUDGED, AND DECREED there be judgment in favor of TransWood, Inc., TransWood-Logis-tics, Inc., Axiall, LLC, Muncie Power Products, Inc., Tuthill Corporation, and DXP Enterprises, Inc. (hereinafter “all parties”) and against Old Republic Life Insurance Company GRANTING the exception of no right of action as to all parties and dismissing with prejudice all claims asserted by Old Republic Life Insurance Company against all parties. ...
It is dispositive for our purposes that the trial court’s August 29, 2016 revised judgment contains precise, definite, and certain decretal language. The trial court’s revised judgment clearly and specifically identifies, on its face, the parties in whose favor the judgment is rendered. The trial court’s revised judgment therefore constitutes a final, appealable judgment over which our appellate jurisdiction extends. The appeal is maintained.

Exception of No Right of Action

In its first and second assignments of error, taken together, Old Republic argues that the trial court erred in sustaining the exception of no right of action and ordering the dismissal, with prejudice, of its claims against the defendants. Old Republic contends that it enjoyed a right of action against the defendants, which it claims were responsible for the injuries sustained by Mr. Johnson. Old Republic specifically asserts that it was entitled to proceed against the alleged tortfeasors as the legal and conventional subrogee of its insured. We disagree.
The function of the peremptory exception of no right of action is to determine whether the plaintiff- belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Hood v. Cotter, 08-0215, (La. 12/2/08), 5 So.3d 819, 829. In other words; the exception questions whether the plaintiff has an interest in judicially enforcing the rights asserted. Estate of Mayeaux v. Glover, 08-2031 (La.App. 1 Cir. 1/12/10), 31 So.3d 1090, 1093, writ denied, 10-0312 (La. 4/16/10), 31 So.3d 1069. The determination of whether the plaintiff has a right of action presents a question of law that is subject to the de novo standard of review. See Eagle Pipe & Supply, Inc. v. Amerada Hess Corp., 10-2267 (La. 10/25/11), 79 So.3d 246, 256.
The rights asserted in this suit are subrogation rights. Subrogation is defined as the substitution of one person to the rights of another. See La. C.C. art. Í825. Subrogation is a legal fiction whereby an obligation, extinguished with regard to the original creditor by payment which he has received from a third person, or from the original debtor but with funds that a third person has provided, is regarded as substituting in favor of this third person who, proverbially speaking, “steps into the shoes” of the original debtor and is entitled to assert, in the measure of what he has paid, the rights and actions of the former creditor. See A. Copeland Enterprises, Inc. v. Slidell Memorial Hospital, 94-2011 (La. 6/30/95), 657 So.2d 1292, 1296.
Subrogation may be either conventional or legal. See La. C.C. art. 1825. This means that subrogation may result from either the agreement of the obligor or the obligee or both with a third person, or directly by operation of law. See A. Copeland Enterprises, Inc., 657 So.2d at *1004 1297. Relevant for our purposes, conventional subrogation by the.obligee occurs under La. C.O. art. 1827 when an obligee who receives performance from a third person subrogates that person to his rights, whereas, subrogation by operation of law takes place under La. C.C. art. 1829(3) in favor of an | ti>obligor who pays a debt he owes, with others or for others an,d who has recourse against those others as a result of the payment.
Legal Subrogation
Generally speaking, legal sub-rogation does not take place simply because a third person pays the debt of another. See La. C.C. art. 1855; Martin v. Louisiana Farm Bureau Cas. Ins. Co., 94-0069 (La. 7/5/94), 638 So.2d 1067, 1068; Watters v. State, Dep’t of Transp. & Develop., 33,870 (La.App. 2 Cir, 9/27/00), 768 So.2d 733, 737. Louisiana Civil Code art. 1829(3) sets forth an exception to this general rule that applies when an obligor pays a debt he owes with others or for others. However, because legal subrogation is in derogation from the principle that no one may acquire another’s rights without that person’s concurrence, the right is strictly construed. See Martin, 638 So.2d at 1068.
. In assessing whether legal subrogation occurs under La. C.C. art. 1829(3), the initial inquiry is whether the obligor is bound with or for others. See Martin, 638 So.2d at 1068. An obligor is bound with others when the obligation is solidary or indivisible. See La. C.C. arts. 1794,1815, and 1818; Martin, 638 So.2d at 1068-69. An obligation is solidary amongst debtors if-they are all obliged to do the same thing, such that any debtor may-be compelled to perform the whole obligation and payment by any debtor exonerates the others; an obligation is indivisible if the object of the performance is not susceptible of division. • See Martin, 638 So.2d at 1069, Herein, because an insurer’s obligation to pay money is always susceptible of division, we need only assess whether there is solidarity of obligation. See id.
Louisiana Civil Code art. 1796 dictates that solidarity of obligation is never presumed; it arises only from a clear expression of the parties’ intent |1sor from the law. It logically follows therefrom that medical, health, and accident insurers[7] are not entitled to legal subrogation rights based upon the payment of insurance benefits alone, since these insurers are not bound with or for tortfeasors whose actions give rise to covered losses. See e.g., A. Copeland Enterprises, Inc., 657 So.2d at 1297; Martin, 638 So.2d at 1070; Courtney v. Harris, 355 So.2d 1039, 1041 (La. App. 4 Cir. 1978) .(noting that payment by an insurer to its insured under an insurance policy’s medical payment coverage provisions does not result in legal sub-rogation, reasoning that such payments are made in response to a distinct contractual obligation arising from the payment of premiums by the insured).
*1005 Similarly, in the matter sub ju-dies, Old Republic made the underlying insurance payments to Mr. Johnson pursuant to its obligations arising from the insurance policy to provide certain benefits, including accidental death and dismemberment benefits, accident paralysis benefits, accident medical expense benefits, and accident disability benefits, to its insured following any covered “accident,” which the policy defines as “a sudden, unexpected, unusual, specific and abrupt event that occurs by chance....” Insofar as legal sub-rogation arises only in favor of one who pays the debt of another, and not in favor of one who pays a debt in performance of his own covenants, see Courtney, 355 So.2d at 1041, we cannot say that Old Republic became legally subrogated to the rights of Mr. Johnson. Hence, the trial court did not err in sustaining the exception of no right of action on the basis of legal | usubrogation. Old Republic’s second assignment of error does not merit relief.
Conventional Subrogation
Under Louisiana law, although an insurer which pays claims on behalf of its insured is not entitled to legal subrogation, it may still be entitled to conventional subrogation if appropriately provided in the contract of insurance. See Watters, 768 So.2d at 737. Conventional subrogation occurs when an obligee who receives performance from a third person subrogates that person to his rights, even without the obligor’s consent. La. C.C. art. 1827. The third person, or conventional subrogee, is substituted to all of the rights of the original obligee and is entitled to recover the full amount of the debt from the obligor, regardless of the amount he paid to the original obligee. See A. Copeland Enterprises, Inc., 657 So.2d at 1298. Although the obligor’s consent is not required for conventional subrogation, the obligee’s intention to subrogate must be clearly indicated; furthermore, if subrogation is disputed, the obligee’s intention must be shown by “clear proof of acts of the obli-gee.. ..” Id.
' On appeal, Old Republic readily acknowledges that there is no specific language within the insurance policy regarding its “subrogation” rights. Nevertheless, Old Republic argues that it is entitled to conventional subrogation as per the language of Section III, Subsection K, which provides, in its entirety, as follows:
K. RIGHT OF RECOVERY
Whenever We have made payments with respect to benefits payable under this group policy in excess of the amount necessary, We shall have the right to recover such payments. We shall notify the Insured Person of such overpayment and request reimbursement from them. However, should the Insured Person not provide such reimbursement, We have the right to offset such overpayment against any other benefits Unpayable to the Insured Person and/or provider of services (based on authorized to .assign benefits) under this Policy to the extent of the overpayment.
We will not be responsible for any expenses, fees, costs, or other monies incurred by the attorney for the Insured Person or Beneficiary, commonly known as the common fund doctrine. The Insured Person is specifically prohibited from incurring any expenses, costs, or fees on behalf of Us in pursuit of his rights of recovery against a third party or Our reimbursement rights as set forth in the Policy. No court costs, expert’s fees, attorney’s fees, filing fees, or other costs and expenses may be deducted from Our recovery without Our prior express written consent.
Our right of recovery and reimbursement, as set forth herein, will not be *1006 affected, reduced, or eliminated by the “made whole doctrine” or any other equitable doctrine or law which requires an Insured Person to be “made whole” before Our right of recovery is allowed. Furthermore, it is prohibited for an Insured Person or Beneficiary to settle a claim against a third party for certain elements of damages, by eliminating damages related to medical expenses incurred.
In order to determine what rights are conveyed by the above-quoted language of Section III, Subsection K, we must determine whether the insurance policy establishes subrogation or reimbursement rights. The concepts of subrogation and reimbursement—although similar in effect—are different principles. Subrogation allows the insurer to stand in the shoes of the insured, whereas, with reimbursement, the insurer only has a right of repayment against the insured. See Barreca v. Cobb, 95-1651 (La. 2/28/96), 668 So.2d 1129, 1131; A. Copeland Enterprises, Inc., 657 So.2d at 1298-99. To determine whether an insurance policy establishes subrogation or reimbursement rights, we must examine the language used in the policy, and, more importantly, the rights which it grants to the insurer. Barreca, 668 So.2d at 1131.
Here, we find that the insurance policy clearly establishes reimbursement rights, rather than subrogation rights, in favor of Old Republic. The operative language of the insurance policy repeatedly and | ^exclusively makes use of the terms “recovery” and “reimbursement,” and provides Old Republic with a right to recover, directly from its insured, any payments made in excess of the amounts necessary under the terms of the insurance policy. In other words, Section III, Subsection K, does not entitle Old Republic to be subro-gated to the rights of its insured based upon the payment of benefits necessitated by the alleged wrongful conduct of a tort-feasor. Thus, Old Republic did not become conventionally subrogated to the rights of Mr. Johnson, and the trial court did not err in sustaining the exception of no right of action on the basis of conventional sub-rogation. Old Republic’s first assignment of error lacks merit.

Answer to Appeal

TransWood has answered the appeal, seeking to reverse the trial court’s supplemental judgment, signed on March 3, 2016, regarding the designation of the record. TransWood argues that the trial court’s judgment regarding the designation of the record was erroneous as a matter of law. TransWood claims it was forced to pay $3,864.41 to have the entire record prepared for appeal as a result of the trial court’s erroneous judgment. Therefore, TransWood requests this court reverse the trial court’s ruling and order the clerk of court to refund it for the amount it paid to have the record prepared for appeal.
Louisiana Code of Civil Procedure arts. 2128 and 2129 set forth the procedural rules governing the designation of the content of the record on appeal as follows:
The form and content of the record on appeal shall be in accordance with the rules of the appellate court.... However, within three days, exclusive of holidays, after taking the appeal the appellant may designate in a writing filed with the trial court such portions of the record which he desires to constitute the record on appeal. Within five days, exclusive of holidays, after service of a copy of this designation on the other party, [ 17that party may also designate in a writing filed with the trial court such other portions of the record as he considers necessary. In such cases the clerk shall prepare the record on appeal as so *1007 directed, but a party or the trial court may cause to be filed ■ thereafter any omitted portion pf the record as a supplemental record. When no designation is. made, the record shall be a transcript of all the proceedings as well as all documents filed in the trial court.
La. C.C.P. art. 2128 (emphasis added).
An assignment of errors is not necessary in any appeal. Where the appellant designates only portions of the record as the record on appeal, he must serve with his designation a concise statement of the points on which he intends to rely, and the appeal shall be limited to those points.
La. C.C.P. at. 2129 (emphasis added).
Herein, the record certified for purposes of appeal proves that Old Republic and TransWood came before the trial court for a hearing pertaining to the designation of the record for purposes of appeal on January 21, 2016, whereupon Old Republic requested the trial court excise from the record everything prior to the filing of the exception of no right of action. TransWood opposed the request and argued that the entirety of the record was relevant to the exception of no right of action; also, TransWood claimed that it was entitled to have the entirety of the-record certified for appeal, since it could potentially obtain relief on any grounds supported by the record.' In open court, the trial court orally ruled in favor of Old Republic and ordered that the record be designated as encompassing “everything in the record from the date of the filing of the no right of action on.” The trial court signed a written judgment in accordance with its'oral ruling on March 3, 2016. Thereafter, on April 25, 2016, TransWood paid the remaining costs, in the sum of $3,864.41, to have the entirety of the proceedings included within the record on appeal.
hsNotably, however, the record certified for purposes of appeal is incomplete with respect to the procedural history of the designation of the record. In .principal part, the original record does not contain any written motions pertaining to the designation of the record for appeal or pertaining to the estimated appeal costs. Thus, in the rule to show cause order issued by this court on March 13, 2017, which is discussed, supra, we also directed the clerk of court for the trial court to supplement the record with “[a]ny pleadings :.. pertaining to the designation of the record for’appeal.’..” In response thereto, the clerk of court for the trial court supplemented the record'with a copy of á certain motion filed by Old Republic on December 17, 2015, which is styled as a “MOTION TO DESIGNATE THE RECORD, FOR EXTENSION OF TIME TO PAY APPEAL COSTS AND REDUCTION ’ OF ESTIMATED APPEAL COSTS” (hereinafter referred to as “the motion to designate”).
In the motion to designate, Old Republic requested the trial court order the designation of certain portions of the record to constitute the record for appeal, namely, Old Republic sought to have the trial court designate the record as encompassing those pleadings filed on or after July 1, 2015, i.e., the date TransWood filed its exception of no right of action. Old Republic submitted that these specific pleadings were the “only relevant pleadings for purposes of the appeal concerning] the subject exception....” Old Republic requested that the deadline to pay appeal costs be extended by a minimum of thirty days to allow the clerk of court for the trial court to revise ■ its estimated notice of - appeal costs. Finally, Old Republic requested “that upon designation of said record that the ■ [estimated appeal costs] be reduced accordingly.”
| iaThe trial court ultimately granted Old Republic’s motion to designate and de *1008 creed that the record be designated as including “[a]ll pleadings and documents filed in the suit record of this matter beginning from July 1, 2015 to the present,. ..’’In so ruling,'the trial court committed legal error, since Old Republic did not file the motion to designate until December 17, 2015, approximately two months after entry of the order of appeal, well beyond the three-day time limit set forth in La. C.C.P. art. 2128.[8]. See and compare Bonner v. Goldberg, 11-0768 (La. App. 4 Cir. 11/2/11), 76 So.3d 1284, 1286 (recognizing that an appellant must designate in writing the portions of the record which she desires to constitute the record on appeal in order to avail herself of designating the record). Thus, we have no choice but to conclude that the trial court also legally erred in requiring TransWood to pay a portion of the costs of the appeal in order to have the entirety of the record prepared for appeal. TransWood is therefore entitled to the relief requested in its answer to the appeal.
DECREE
For the foregoing reasons, we maintain the appeal and affirm the revised judgment of the trial court, signed on August 29, 2016, sustaining the peremptory exception of no right of action and ordering the dismissal, with prejudice, of Old Republic’s claims against the defendánts-appellees, TransWood, Inc. and TransWood -Logistics, Inc., Tuthill Corporation, Axiall, LLC, f/k/a Georgia Gulf Chemicals & Vinyls, LLC, Muncie Power 12flProducts, Inc., and DXP Enterprises, Inc, In addition, we grant TransWood’s answer to the appeal and order the reversal of' the trial court’s supplemental judgment, signed on March 3, 2016, granting Old Republic’s motion to designate the record. The clerk of court for the trial court is hereby ordered to refund TransWood in the sum of $3,864.41. All costs of this appeal are assessed to the plaintiff-appellant, Old Republic Life Insurance Company; . - ‘
APPEAL MAINTAINED; JUDGMENT SUSTAINING EXCEPTION OF NO RIGHT OF ACTION AFFIRMED; ANSWER TO APPEAL GRANTED.

. Mr. Johnson and/or his heirs have never been parties to this lawsuit. Mr. Johnson timely filed a separate lawsuit in state court against the same defendants. Mr. Johnson's lawsuit was subsequently removed to federal court based upon diversity of citizenship. See Johnson v. Transwood, Inc., 2014 WL 3748320, *1 (M.D. La. 7/30/14) (unpublished).

. TRG, Inc. f/k/a Delta Process Equipment, Inc., Westside Truck & Auto, Stephen Hoggie, Max Whittington, N.G. Gilbert Corporation f/k/a Muncie Construction Corporation, and International Truck & Engine Corporation a/k/a Navistar, Inc. were named as additional defendants to the matter. These original defendants are not parties to this appeal.

. During the pendency of this appeal, several of the defendants filed exceptions of res judi-cata with this court based upon the rulings of the federal court in the aforementioned lawsuit brought by Mr. Johnson and/or his heirs. ■ We pretermit consideration of these exceptions, which we regard as moot, in light- of our conclusion that the trial court did not err in sustaining the exception of no right of action and dismissing Old Republic’s suit against the defendants on this basis.

. Old Republic filed the motions to quash after obtaining an order of appeal. Old Republic submitted that it could not participate in discovery because the case was pending appeal and the trial court was divested of jurisdiction pursuant to La. C.C.P. art. 2088.

. Specifically, at the January 21, 2016 hearing regarding the designation of the record for appeal, counsel for Old Republic stated, in open court, “[Old Republic] filed the motion for new trial, then my clients decided to withdraw that. And then, subsequently, we filed the motion and order for appeal which Your Honor signed and granted.”

. The original judgment was rendered and signed by Judge J. Robin Free, who was later *1003 suspended from office by order of the Louisiana Supreme Court. See In re Free, 16-0434 (La. 6/29/16), 199 So.3d 571. The revised judgment was signed by Judge Edward J. Gaidry, as a successor judge, in accordance with the provisions of La. R.S. 13:4209.

. We note that the courts of this state have, in some cases,- found, .that, a property insurer is entitled to legal subrogation, since these insurers are liable with a tortfeasor to the extent that both are obliged to the same object, i.e., repair of the tort damage. See State Farm Mut. Auto. Ins. Co. v. Berthelot, 98-1011 (La. 4/13/99), 732 So,2d 1230, 1233; Aetna Ins. Co. v. Naquin, 488 So.2d 950, 954 (La. 1986). In rendering our decision in this case, however, we do not find this jurisprudence persuasive, given the existence of factually apposite case law and the fact that the Louisiana Supreme Court has not approved of the application of legal subrogation for general use in the insurance context, See e.g., Martin, 638 So.2d at 1069 ("[Aetna Ins. Co., supra, is] a property damage exception to the general rule, which should not be extended to health and accident insurance.’1).

. Old Republic filed its motion to designate exactly nine days after the clerk of court for the trial court mailed notice of the estimated costs of appeal. We note that La. C.C.P. art. 2126(C) allows an appellant to question the excessiveness of the estimated costs of appeal by filing a written application for reduction in the trial court within twenty days after the clerk of court for the trial court sends notice of the estimated costs of appeal. However, .we find that the provisions of La. C.C.P. art. 2126(C) pertaining to the payment of costs must be distinguished from the unambiguous codal pronouncements governing the determination of the content of the record, namely, La. C.C.P. art. 2128. In other words, although Old Republic may have been entitled to challenge the excessiveness of the estimated costs of appeal via its motion filed on December 17, 2015, the trial court was not empowered to shift the costs of the appeal to the appellee or fo order the ex post facto limitation of the record under La. C.C.P. art. 2126(C) notwithstanding the appellant’s failure to designate the portion of the record which it desired to constitute the record on appeal within three days of taking the appeal as required pursuant to La. C.C.P, art. 2128.