# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-217

INNOVATIVE HOSPITALITY SYSTEMS, LLC

VERSUS

JOHNNY ABRAHAM D/B/A/ ABE'S GROCERY

**********

ON APPLICATION FOR WRIT OF SUPERVISORY
REVIEW FROM THE FOURTEENTH JUDICIAL
DISTRICT COURT, PARISH OF CALCASIEU,
NO. 2008-1677 HONORABLE WILFORD D. CARTER,
DISTRICT JUDGE

**********

**BILLY HOWARD EZELL
JUDGE**

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

Gremillion, J., dissents and assigns written reasons.

**WRIT DENIED.**

**Robert William Collings**
**Collings & Collings, APLC**
**3434 Common Street**
**Lake Charles, LA 70607**
**(337) 477-4725**
**Counsel for Defendant/Respondent:**
**Johnny Abraham D/B/A Abe's Grocery**

**Stephen Charles Polito**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, LLP**
**P. O. Box 2900**
**Lake Charles, LA 70602-2900**
**(337) 436-9491**
**Counsel for Defendant/Respondent:**
**Jeff Davis Banc Shares, Inc. D/B/A Jeff Davis Bank & Trust Co.**

**Wayne Allen Shullaw**
**P. O. Box 4815**
**Lafayette, LA 70502-4815**
**(337) 266-2310**
**Counsel for Defendant/Respondent:**
**J. P. Morgan Chase Bank, N.A.**

**James R. Sutterfield**
**Sutterfield & Webb, LLC**
**650 Poydras St., Suite 2715**
**New Orleans, LA 70130**
**(504) 598-2715**
**Counsel for Defendant/Respondent:**
**Mt. Hawley Insurance Company**

**Max Jeffrey Cohen**
**James Thomas Busenlener**
**Lowe, Stein, Hoffman, Allweiss & Hauver, LLC**
**701 Poydras Street, #3600**
**New Orleans, LA 70139**
**(504) 581-2450**
**Counsel for Defendant/Applicant:**
**First Specialty Insurance Corp.**

**Robert B. Evans, III**
**Cesar R. Burgos**
**Gabriel O. Mondino**
**Burgos & Evans, LLC**
**3535 Canal Street, 2nd Fl**
**New Orleans, LA 70119-6135**
**(504) 488-3722**
**Counsel for Plaintiff/Respondent:**
**Innovative Hospitality Systems, LLC**

**Jason Paul Foote**
**Chopin, Wagar, Richard & Kutcher, LLP**
**3850 North Causeway Blvd., Suite 900**
**Metairie, LA 70002-8130**
**(504) 830-3838**
**Counsel for Defendant/Respondent:**
**Ace Cash Express, Inc.**

**EZELL, JUDGE.**

Innovative Hospitality Systems, LLC, alleged in its petition that in March 2007, at least 108 of its checks were fraudulently presented for cashing at Abe's Grocery in Lake Charles, Louisiana. The applicant, First Specialty Insurance Corporation, provided a commercial general liability policy for Abe's. First Specialty filed a motion for summary judgment asserting that the cashing of these fraudulent checks was not covered by its policy. The trial court denied First Specialty's motion. First Specialty sought supervisory writs from the judgment denying the motion for summary judgment. This court denied writs. First Specialty then sought relief from the Louisiana Supreme Court, which remanded the case for briefing, argument, and a full opinion. *Innovative Hospitality Systems, LLC v. Abraham*, 10-1285 (La. 11/5/10), ___ So.3d ___. For the reasons that follow, we deny the writ.

## ANALYSIS

The original petition in this suit avers that Abe's Grocery, in addition to functioning as a grocery store, also cashed checks and that numerous fraudulent checks had been negotiated on Innovative Hospitality's bank account by the various check-cashing businesses-defendants, including Abe's. In addition to naming the businesses, Innovative Hospitality eventually joined the businesses' insurers, including First Specialty who provided a commercial general liability (CGL) policy to Abe's. The suit also was brought against the banks in which the checks had been deposited by the various check-cashing businesses; therefore, these banks filed cross-claims against these businesses and their insurers, including First Specialty.

First Specialty filed a motion for summary judgment claiming that its policy did not provide coverage for the losses at issue because the losses did not constitute either

"bodily injury" or "property damage" as defined by the policy. In support of its motion, First Specialty attached a certified copy of the policy it issued to Abe's. Abe's opposed the motion, not on the basis that any genuine issue of material fact existed, but rather on the basis that the language of the First Specialty policy afforded coverage for its loss.

Louisiana Code of Civil Procedure Article 966(B) provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. The Louisiana Supreme Court discussed the standard applicable to appellate review of summary judgments involving insurance contracts in *Robinson v. Heard*, 01-1697, pp. 3-4 (La. 2/26/02), 809 So.2d 943, 945:

> A reviewing court examines summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hospital, Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730, 750. A reviewing court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Smith*, 639 So.2d at 750.

> Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment. *Sanchez v. Callegan*, 99-0137 (La.App. 1 Cir. 2/18/00), 753 So.2d 403, 405. When the language of an insurance policy is clear and unambiguous, a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. *Sanchez*, 753 So.2d at 405.

"Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Reynolds v. Select Props., Ltd.*, 93-1480, p. 2 (La.

2

4/11/94), 634 So.2d 1180, 1183.

An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. La.Civ.Code art. 2045. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La.Civ.Code art. 2047. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.

The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.

It is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.

*Id*. (case citations omitted).

The policy provides, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy defines "property damage" as:

"Property damage" means:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

3

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

First Specialty contends that because Innovative Hospitality and the cross-claim plaintiffs are seeking to recoup funds withdrawn from Innovative Hospitality's bank account, such transactions do not involve physical items; thus, the object of this suit is to recoup intangible things. Therefore, First Specialty asserts that its policy provides no coverage under the policy's express definition of "property damage" as being limited to tangible things.

The trial court found that since Abe's paid out cash on the fraudulent checks, this cash was in fact tangible. Therefore, the trial court held that First Specialty was not entitled to summary judgment dismissing it from this action because it had failed to show that the policy did not provide coverage.

The term "tangible property" in such policies carries the same meaning as the civilian term "corporeal property." *See Massey v. Decca Drilling Co., Inc.*, 25,973 (La.App. 2 Cir. 12/7/94), 647 So.2d 1196, *writs denied*, 95-69, 95-411, 95-417 (La. 4/21/95), 653 So.2d 563 and 564.

In *South Central Bell Telephone Co. v. Barthelemy*, 94-499 (La. 10/17/94), 643 So.2d 1240, the supreme court discussed the meaning of "tangible personal property" utilizing the civilian property concepts embodied in the Louisiana Civil Code. The supreme court observed that the Civil Code differentiates between corporeals and incorporeals in La.Civ. Code art. 461 as follows: "Corporeals are things that have a body, whether animate or inanimate, and can be felt or touched. Incorporeals are things

4

that have no body, but are comprehended by understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual property."

The supreme court, citing La.Civ.Code art. 471, also noted that corporeal movables are "'things, whether animate or inanimate, that normally move or can be moved from one place to another.'" *Id*. at 1244. The supreme court also recognized La.Civ.Code art. 473 as defining incorporeal movables as "'rights, obligations, and actions that apply to a movable thing . . . .Movables of this kind are such as bonds, annuities, and interests or shares in entities possessing juridical personality.'" *Id*.

The supreme court then held that "the civilian concept of corporeal movable encompasses all things that make up the physical world; conversely, incorporeal, i.e., intangibles, encompass the non-physical world of legal rights." *Id*.

First Specialty argues that Innovative Hospitality and the co-defendant banks are seeking to recover incorporeals; that is amounts withdrawn from Innovative Hospitality's bank account. First Specialty asserts that Innovative Hospitality does not have actual dollar bills sitting in a bank; rather, Innovative Hospitality has a right to go to the bank where it holds an account and ask to withdraw in dollars an amount equal to its account balance. In countering the trial court's reasoning that Innovative Hospitality and the co-defendant banks are seeking reimbursement for the physical dollars that First Specialty's insured, Abe's, paid out on the fraudulent checks, First Specialty suggests that those dollars were not damaged or destroyed in any fashion so as to bring the dollar bills within the coverage of its insurance policy. Furthermore, First Specialty points out that Innovative Hospitality never had ownership of the actual dollar bills paid out by Abe's on the fraudulent checks. Instead, the dollars were simply handed over by Abe's to those cashing the fraudulent checks. Accordingly,

5

First Specialty contends that the trial court's reasoning for finding coverage was incorrect.

Innovative Hospitality, on the other hand, contends that its injury occurred when the fraudulent check and cash were exchanged at Abe's. In Innovative Hospitality's words, "The operative reality of negotiable instruments is that while Abe's employee was reaching into its cash drawer. . . . that employee was effectively reaching into Plaintiff's bank account."

At issue in this case is the specific language in the policy: "Loss of use of tangible property that is not physically injured." Specifically, damage to the property is not required. What is required is a "loss of use" of "tangible property".

In *Succession of Franklin*, 42,496 (La.App. 2 Cir. 10/17/07), 968 So.2d 811, the court held that an "uncashed check" was an incorporeal movable. The court reasoned that the check represented the bank's obligation to pay the funds, but was not the funds themselves. Obviously, the funds themselves are corporeal movables or tangible property.

Once Abe's Grocery presented cash in exchange for the check, the check was converted into actual funds which were corporeal movables. It was at this point that any responsibility Abe's Grocery may have attached. This action resulted in a loss of use of funds to Innovative Hospitality. It is ridiculous to argue that Innovative Hospitality has not lost actual cash as a result of the cashing of fraudulent checks. The funds in its bank account are actual funds deposited at the bank by Innovative Hospitality. As a result of Abe's Grocery cashing the checks, Innovative Hospitality Systems suffered a "loss of use" of its cash money, a corporeal movable and therefore, tangible property. *See Succession of Miller*, 405 So.2d 812 (La.1981); *Succession of*

6

*Walker*, 533 So.2d 70 (La. App. 3 Cir. 1988), *writ denied*, 536 So.2d 1254 (La.1989). If Abe's Grocery is held responsible for this loss, it will be for the loss of cash money it handed over in cashing the fraudulent checks.

We find that the CGL policy of insurance issued by First Speciality to Abe's Grocery provides coverage for the type of claims asserted in this case. Therefore, we find no error in the trial court's ruling denying First Specialty's motion for summary judgment.

**WRIT DENIED.**

# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 10-217

## INNOVATIVE HOSPITALITY SYSTEMS, LLC

### VERSUS

## JOHNNY ABRAHAM, ET AL.

**GREMILLION, Judge, dissenting.**

Innovative Hospitality Systems, LLC, alleged in its petition that in March 2007, at least 108 of its checks were fraudulently presented for cashing at Abe's Grocery in Lake Charles, Louisiana. The applicant, First Specialty Insurance Corporation, insured Abe's. It filed a motion for summary judgment asserting that the cashing of these fraudulent checks was not covered by its policy. The trial court denied First Specialty's motion. First Specialty sought supervisory writs from the judgment denying the motion for summary judgment. This court denied writs. First Specialty then sought relief from the Louisiana Supreme Court, which remanded the case for briefing, argument and a full opinion. *Innovative Hospitality Systems, LLC v. Abraham*, 10-1285 (La. 11/5/10), ___ So.3d ___. In support of its motion, First Specialty attached a certified copy of the policy it issued to Abe's. Abe's opposed the motion, not on the basis that any genuine issue of material fact existed, but rather on the basis that the language of the First Specialty policy afforded coverage for its loss. The policy provides, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy defines "property damage" as:

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur

at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that cause it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

First Specialty contends that because Innovative Hospitality and the cross-claim plaintiffs are seeking to recoup funds withdrawn from Innovative Hospitality's bank account, such transactions do not involve physical items; thus, the object of this suit is to recoup intangible things. Therefore, First Specialty asserts that its policy provides no coverage under the policy's express definition of "property damage" as being limited to tangible things.

The trial court and the majority found that since Abe's paid out cash on the fraudulent checks, this cash constitutes Innovative Hospitality's loss; therefore, First Specialty was not entitled to summary judgment dismissing it from this action because it had failed to show that the policy did not provide coverage.

The term "tangible property" in such policies carries the same meaning as the civilian term "corporeal property." *See Massey v. Decca Drilling Co., Inc.*, 25,973 (La.App. 2 Cir. 12/7/94), 647 So.2d 1196, *writs denied*, 95-69, 95-411, 95-417 (La.4/21/95), 653 So.2d 563 and 564. Louisiana Civil Code Article 461 reads, in pertinent part, "Corporeals are things that have a body, whether animate or inanimate and can be felt or touched." First Specialty correctly argues that Innovative

2

Hospitality and the co-defendant banks are seeking to recover incorporeals, that is amounts withdrawn from Innovative Hospitality's bank account. Innovative Hospitality does not have actual dollar bills sitting in a bank; rather, it has a right to go to its bank and ask to withdraw in dollars an amount equal to its account balance.

In countering the trial court's reasoning that Innovative Hospitality and the co-defendant banks are seeking reimbursement for the physical dollars that First Specialty's insured, Abe's, paid out on the fraudulent checks, First Specialty suggests that those dollars were not damaged or destroyed in any fashion so as to bring the dollar bills within the coverage of its insurance policy. Furthermore, First Specialty points out that Innovative Hospitality never had ownership of the actual dollar bills paid out by Abe's on the fraudulent checks. Instead, the dollar bills were simply handed over by Abe's to those cashing the fraudulent checks. Accordingly, First Specialty contends that the trial court's reasoning for finding coverage was incorrect.

Innovative Hospitality, on the other hand, contends that its injury occurred when the fraudulent check and cash were exchanged at Abe's. In Innovative Hospitality's words, "The operative reality of negotiable instruments is that while Abe's employee was reaching into its cash drawer. . . that employee was effectively reaching into Plaintiff's bank account." I disagree. The Louisiana Commercial Laws, La.R.S. 10:1-101, et seq., govern the exchange of negotiable instruments. The first bank to take a negotiable instrument, even if it is also the payor bank, is defined as the Depositary Bank. La.R.S. 10:4-105(2). The "Payor Bank" is the bank that is the drawee of the draft. La.R.S. 10:4-105(3). Between those banks lie "Intermediary Banks." La.R.S. 10:4-105(4). At every step along the path between the presentment of the check and the withdrawal from the payor's account one finds duties imposed

3

on those who receive the check. *See* La.R.S. 10:3-412, et seq. The funds the check represents are taken from the indorser's account until the check is cleared. The funds from the drawer's account are routed into the account of the last holder.

Until Abe's bank presented the fraudulent check to Innovative Hospitality's bank, and that bank then honored the check and debited Innovative Hospitality's account, Innovative Hospitality still had the use of those funds. Innovative Hospitality did not lose cash, but the right to use its funds.

Innovative Hospitality makes the valid point that a check is also considered a corporeal. However, it is not making a claim for the damage to the check. It is making a claim for funds that were fraudulently withdrawn from its checking account.

It has been further suggested that because the policy states that First Specialty insures against "[l]oss of use of tangible property that is not physically injured," the loss experienced by Innovative Hospitality is covered. I believe the "loss of use" coverage does not apply. Our colleagues on the first circuit held that "loss of use" coverage did not extend to compensate a business for its employee's embezzlement of funds. *Jim Carey Dist. Co., Inc. v. Zinna*, 589 So.2d 526 (La.App. 1 Cir. 1991). I agree with that analysis.

## CONCLUSION

The miscreants who stole and forged checks drawn on Innovative Hospitality's account withdrew cash. The cash, however, was not what Innovative Hospitality lost. It lost the right to use its funds on deposit with its bank. The loss did not consist of tangible property. As such, First Specialty, as the insurer of Abe's Grocery, does not afford Abe's coverage for that loss. I would grant First Specialty's application for writs and make that grant peremptory.

4