STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-881

AMERICAN POSTAL WORKERS UNION,
AFL-CIO HEALTH PLAN

VERSUS

YOLANDA TIPPETT, RONALD TIPPETT,
BROUSSARD & HART, LLC

************

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C2008-0585 A
HONORABLE MARTHA O'NEAL, DISTRICT JUDGE
************

JAMES T. GENOVESE
JUDGE

************

Court composed of Oswald A. Decuir, James T. Genovese, and Phyllis M. Keaty, Judges.

AFFIRMED AS AMENDED.

Brian W. Arabie
Arabie Law Firm
1011 Lakeshore Drive, Ste. 208
Post Office Box 3004
Lake Charles, Louisiana 70601
(337) 493-2000
COUNSEL FOR PLAINTIFF/APPELLEE:
    American Postal Workers Union,
    AFL-CIO Health Plan

**Steven Broussard**
**Broussard & Hart, LLC**
**1301 Common Street**
**Lake Charles, Louisiana 70601**
**(337) 439-2450**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Yolanda Tippett and Ronald Tippett**

**GENOVESE, Judge.**

Defendants, Yolanda Tippett and Ronald Tippett,[1] appeal the trial court's judgment in favor of Plaintiff, American Postal Workers Union, AFL-CIO Health Plan (Health Plan), awarding Plaintiff $48,610.86, representing reimbursement for medical expenses paid by the Health Plan for medical treatment received by Mr. Tippett as a result of an automobile accident. For the following reasons, we affirm as amended.

## FACTS AND PROCEDURAL HISTORY

Ronald Tippett was involved in an automobile accident on April 15, 2003, which resulted in a lawsuit being filed against the tortfeasor and his insurer. As a result of the injuries sustained in the accident, Mr. Tippett incurred medical expenses in the amount of $48,610.86 which were paid by the Health Plan pursuant to a health insurance policy issued through his wife's employment as a postal worker. The Tippetts elected to settle their claims against the tortfeasor and his insurer for $653,712.25, and that lawsuit was dismissed. The Health Plan made demand upon the Tippetts for reimbursement of all the medical expenses it paid on behalf of Mr. Tippett. The Tippetts maintained that the Health Plan was not entitled to any reimbursement. Consequently, the Health Plan instituted the instant litigation, seeking reimbursement of the $48,610.86 it paid on behalf of Mr. Tippett.

The Health Plan filed a Motion for Summary Judgment, asserting that there were no disputed material issues of fact and that the Health Plan was entitled to judgment for $48,610.86 as a matter of law. Following a hearing on April 11,

---

[1] Broussard & Hart, LLC was also named as a Defendant in the instant matter. Although judgment was rendered only against the Tippetts, the appeal filed with this court included Broussard & Hart, LLC. However, that entity acknowledges in brief that it was "inadvertently" included in the motion for appeal, and, "since no judgment was rendered against Broussard & Hart, LLC, [it] should not be considered as a party to this appeal."

2011, the trial court rendered judgment in favor of the Health Plan. The Tippetts appeal.

## ASSIGNMENTS OF ERROR

The Tippetts present the following assignments of error for our review:

1. The trial court erred in finding that Ronald Tippett had been "made whole" as a result of the settlement of his tort claim, and[,] therefore, [the] Health Plan was entitled to reimbursement under its contract.

2. Alternatively, should this [c]ourt affirm the trial court's decision ordering reimbursement, then it is submitted the trial court was in error for not reducing the reimbursement for [Mr.] Tippett's attorney fees and litigation expenses in connection with obtaining the recovery for [the] Health Plan.

## LAW AND DISCUSSION

In their first assignment of error, the Tippetts contend that the trial court erred in ordering reimbursement to the Health Plan because they have not been "made whole" from the settlement of their claims with the tortfeasor. To the contrary, the Health Plan asserts that the Tippetts are contractually obligated to reimburse it for the medical expenses which it paid on behalf of Mr. Tippett stemming from the accident with the tortfeasor.

An insurance policy is a contract between the parties. *Innovative Hospitality Sys., LLC v. Abraham*, 10-217 (La.App. 3 Cir. 4/6/11), 61 So.3d 740, *writ denied*, 11-845 (La. 6/17/11), 63 So.3d 1036. While the parties are generally free to agree to whatever terms and conditions they wish to contractually oblige themselves, any provisions which are against public policy are not enforceable. *Id.*

In this instance, the provisions of the insurance policy included a reimbursement provision which states as follows (emphasis added):

> **When others are responsible**
> **for injuries**             If you or your dependent's injury is
>                              caused by another person or entity,
>                              the Health Plan will pay benefits for

2

that injury or illness according to the terms of the Brochure in effect at the time services are provided. If the Health Plan pays any benefits for that injury or illness, when you or your dependent receive money or have a right to receive money from any source, including underinsured and uninsured automobile coverage, as a result of this injury or illness, **you or your dependent must reimburse the Health Plan for any expenses we paid for that injury or illness. The amount owed to the Health Plan will not be reduced for attorney's fees or costs nor because you or your dependent was not fully compensated for the injury or illness** unless the Plan agrees in writing to a reduction.

Following Mr. Tippett's injury, Mrs. Tippett completed a Health Plan questionnaire about Mr. Tippett's accident and signed the following statement:

I have read and understand that the subrogation and workers' compensation provisions of the American Postal Workers Union Health Plan Brochure. I understand that the Health Plan, by operation of law and contract, has a right to full reimbursement for medical bills paid as a result of an accident, injury, or illness if any recovery from any source is made on account of that accident, injury, or illness.

The provisions of the insurance policy unambiguously mandate reimbursement of the medical expenses paid on behalf of Mr. Tippett regardless of whether the insured was "fully compensated" or "made whole." However, these provisions do not end the inquiry. Next, we must determine if the contractual provisions are violative of public policy.

The Louisiana Commissioner of Insurance issued Directive 175[2] (emphasis added) on January 8, 2003, which sets forth, in pertinent part, as follows:

---

[2] The Louisiana Commissioner of Insurance has the authority to make rules and regulations in order to make effective the implementation of the Insurance Code. These directives have the force and effect of law. *See* La.R.S. 22:2(E); La.R.S. 22:11(A).

3

While insurers are free to include whatever provisions they choose in their policies, the provisions **must be consistent with the laws and public policy of Louisiana.** It has long been the public policy of this state, as expressed in Louisiana jurisprudence, **that subrogation provisions in insurance contracts cannot harm the insured. This same rule of public policy applies to reimbursement provisions in insurance contracts**. Further, an insurer invoking a subrogation or reimbursement provision **is required by the public policy** of this state to contribute to the attorney's fees incurred in obtaining a recovery from the third party.

The provisions of the insurance policy whereby the contract requires that an insured reimburse the Health Plan for medical expenses it paid on his/her behalf, regardless of whether the insured is "fully compensated," runs afoul of Directive 175 since no consideration is given as to whether enforcement of same would necessarily result in harm to the insured. If there is a determination that enforcement of the contractual reimbursement provisions results in harm to the insured, then the insurance policy would be inconsistent with the public policy provisions set forth in Directive 175.

Despite the Tippetts' contention that they had not been made whole via settlement, the trial court concluded that they owed full reimbursement to the Health Plan, reasoning as follows:

> [I]f you've settled a case or the case is [sic] gone to trial and it has been taken care of throughout all of the appeal's process in that manner then you have been made whole whether or not your client believes they [should have] received more money or not.
>
> . . . .
>
> The made-whole doctrine applies and based on the fact that you settled the case, you were satisfied that your clients were made whole and therefore they have to honor their contract.

In this case, the Tippets filed a lawsuit against the tortfeasor. The Tippetts were aware that Mr. Tippett's medical expenses had been paid by the Health Plan. Following the accident, Mrs. Tippett signed the Health Plan questionnaire expressly acknowledging the Health Plan's right of reimbursement for the medical

4

expenses that it paid. Additionally, there was correspondence between the Health Plan and counsel for the Tippetts advising them of the amounts paid out and the Health Plan's right of reimbursement. When the Tippetts reached their settlement with the tortfeasor for $653,712.25, they were aware of their contractual obligation to reimburse the Health Plan. The Tippetts voluntarily agreed to a settlement amount with full knowledge of their contractual obligation of reimbursement and the amount thereof; therefore, they cannot evade that obligation by subsequently asserting that the amount of settlement was insufficient for them to have been made whole.

For the foregoing reasons, notwithstanding the issue of attorney fees, we find no error in the judgment of the trial court ordering the Tippetts to reimburse the Health Plan for the medical expenses it paid.

In their second assignment of error, the Tippetts contend that should this court affirm the trial court's decision relative to reimbursement, then the amount of the award must be reduced for attorney fees and litigation expenses that they incurred in obtaining recovery of the medical expenses incurred. We agree as to attorney fees.

As quoted above, Directive 175 negates any policy provision which results in harm to the insured. Moreover, the directive expressly provides that "an insurer invoking a subrogation or reimbursement provision is required by the public policy of this state to contribute to the attorney[] fees incurred in obtaining a recovery from a third party." In this instance, it was only through the expenditure of time, effort, and resources of counsel for the Tippetts that any recovery was obtained from the tortfeasor. The amount of that recovery undisputedly includes an amount for medical expenses which enures to the benefit of the Health Plan. Directive 175 specifically states that an insurer is required by public policy to contribute to the

attorney fees incurred in obtaining a recovery from a third party. The trial court failed to award the Tippetts any contribution toward attorney fees in violation of Directive 175. The judgment of the trial court must, therefore, be amended to provide for such contribution.

The record indicates that the Tippetts paid their attorney one-third of the settlement amount less the amount designated for property damage. We find that the Health Plan's contribution toward attorney fees should likewise be one-third of the amount that it is to receive. Accordingly, the $48,610.86 in reimbursement owed by the Tippetts to the Health Plan must be reduced by $16,203.62 (one-third of $48,610.86) for attorney fees.

## DECREE

For the reasons assigned, the judgment of the trial court in favor of American Postal Workers Union, AFL-CIO Health Plan, in the amount of $48,610.86 is reduced and amended to $32,207.24. As amended, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally among the parties.

**AFFIRMED AS AMENDED.**