STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2018CA1708

LYNETTE BAYHAM AND ADAM BAYHAM

VERSUS

STATE OF LOUISIANA, THROUGH THE
OFFICE OF GROUP BENEFITS

Judgment Rendered: _____**AUG 2 9 2019**_____, 2019

* * * * * * * *

Appealed from the 19th Judicial District Court

In and for the Parish of East Baton Rouge

State of Louisiana

Docket No. C628132

The Honorable Judge Wilson E. Fields Presiding

* * * * * * * *

| | |
|---|---|
| Lindsey J. Leavoy<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant<br>Lynette Bayham |
| Marjorie G. O'Connor<br>Tameika Richard<br>Paul Holmes<br>Baton Rouge, LA | Counsel for Defendant/Appellee<br>State of Louisiana, through the<br>Office of Group Benefits |

* * * * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND LANIER, JJ

Whipple, C.J. Concurs for reasons assigned
per Wilson
Welch J. dissents and assigns reasons.

**LANIER, J.**

In the instant appeal, the plaintiff/appellant, Lynette Bayham, challenges the judgment of the Nineteenth Judicial District Court in favor of the defendant/appellee, the State of Louisiana through the Office of Group Benefits (OGB), which awarded OGB $32,252.74, with judicial interest and costs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On June 13, 2012, Lynette Bayham and her adult son Adam were involved in an automobile accident on La. Hwy. 44 in Ascension Parish. Adam was operating his vehicle with Mrs. Bayham as his passenger, when they were rear-ended by another vehicle. Mrs. Bayham and her son were both injured in the accident.

As a result of the accident, on December 6, 2012, Mrs. Bayham underwent a primary anterior interbody fusion from C5 to C7 with discectomy at C5-C6 and C6-C7. Treatment for her accident-related injuries was completed by December 31, 2013. Mrs. Bayham's past medical expenses totaled $105,432.61. From the time of the accident until December 31, 2013, Mrs. Bayham had health coverage through OGB under its HMO plan. OGB issued medical benefits to Mrs. Bayham in the amount of $32,252.74 for treatment of her accident-related injuries.

The OGB HMO plan under which Mrs. Bayham was covered contained a "Subrogation and Reimbursement" section, which read as follows:

**Subrogation and Reimbursement**

Upon payment of any eligible Benefits covered under this Plan, the Office of Group Benefits shall succeed and be subrogated to all rights of recovery of the covered Employee, his Dependents or other Covered Persons, or their heirs or assigns, for whose benefit payment is made, and they shall execute and deliver instruments and papers and do whatever is necessary to secure such rights, and shall do nothing after loss to prejudice such rights.

2

The Office of Group Benefits has an automatic lien against and shall be entitled, to the extent of any payment made to a covered Employee, his Dependents or other Covered Persons, to 100% of the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of a covered Employee, his Dependents or other Covered Persons, against any person or entity legally responsible for the disease, illness, accident or injury for which said payment was made.

To this end, covered Employees, their Dependents, or other Covered Persons agree to immediately notify the Office of Group Benefits of any action taken to attempt to collect any sums against any person or entity responsible for the disease, illness, accident, or injury.

These subrogation and reimbursement rights also apply when a Covered Person recovers under, but not limited to, an uninsured or underinsured motorist plan, homeowner's plan, renter's plan, medical malpractice plan, worker's compensation plan or any general liability plan.

Under these subrogation and reimbursement rights, the Office of Group Benefits has a right to first recovery to the extent of any judgment, settlement, or any payment made to the covered Employee, his Dependents or other Covered Persons. These rights apply regardless of whether such recovery is designated as payment for, but not limited to, pain and suffering, medical benefits, or other specified damages, even if he is not made whole (i.e., fully compensated for his injuries).

Mrs. Bayham received a total of $155,000.00 in insurance proceeds as a result of the accident. The insurance proceeds were comprised of the following: $5,000.00 medical payments coverage limits from Progressive Insurance Company (Progressive), Mrs. Bayham's insurer; $50,000.00 bodily injury coverage limits from State Farm Insurance Company (State Farm), the insurer of the at-fault driver; and $100,000.00 underinsured bodily injury coverage limits from Progressive. Upon receiving these payments, Mrs. Bayham and her son released the at-fault driver, State Farm, and Progressive from all liability related to the accident.

On several occasions, OGB issued notices to Mrs. Bayham and her son of its reimbursement/subrogation rights in relation to the medical expense payments. In

3

response, Mrs. Bayham and her son sent letters to OGB, in which they informed OGB that their case had been settled, but that OGB was not entitled to any of the settlement funds pursuant to the "Make Whole" doctrine. Nevertheless, Mrs. Bayham and her son stated that the proceeds were being kept in a trust account in case it was later determined that OGB was entitled to any of the proceeds. Mrs. Bayham also requested from OGB any statutory or legal authority that established OGB's entitlement to the funds. Mrs. Bayham and her son alleged that OGB never responded to their letters.

Mrs. Bayham and her son filed a petition for declaratory judgment on February 6, 2014, requesting the district court to rule that, given their contention that the settlement funds had not fully remedied their injuries from the accident, and pursuant to the "make whole" doctrine, OGB was barred from recovering any of the settlement funds. OGB filed a reconventional demand on March 7, 2014, claiming that OGB was entitled to recover all of the medical benefits it had issued to Mrs. Bayham and her son.

After a hearing on April 10, 2018, the district court signed a judgment on May 29, 2018 in favor of OGB in the amount of $32,252.74, plus judicial interest and costs. Mrs. Bayham has appealed this judgment.[1]

## ASSIGNMENTS OF ERROR

Mrs. Bayham alleges the following assignments of error:

1. The district court abused its discretion in "essentially" ruling Mrs. Bayham's damages were only $155,000.00.[2]

---

[1] Adam has not appealed the district court's judgment. Our decision, therefore, will have no bearing on his rights in the instant case.

[2] While we find Mrs. Bayham's first assignment of error is not germane to the primary issue of whether OGB is entitled to reimbursement, we find that the district court made no ruling on quantum. While the district court stated that Mrs. Bayham had been made whole by her settlement, the district court made no statement as to the type or value of damages.

4

2. The district court came to an improper legal determination under the undisputed facts of the case.

3. The district court erred in deciding that Mrs. Bayham was "made whole."

4. The district court erred in deciding that Mrs. Bayham was obligated to reimburse OGB because her recovery fully compensated her for her accident-related injuries.

## DISCUSSION

Mrs. Bayham argues in her brief that the manifest error standard of review is not applicable in the instant case, because no facts were in dispute; rather, this Court need only decide whether under these undisputed facts she was "made whole."

The Make Whole doctrine is an insurance principle which mandates that, in the absence of a contrary agreement, an insurance company may not enforce its subrogation rights until the insured has been fully compensated for her injuries, or "made whole." *Roberts v. Richard*, 99-0259 (La. App. 3 Cir. 7/28/99), 743 So.2d 731, 733, writ denied, 99-2527 (La. 11/19/99), 749 So.2d 677.

In *Roberts*, the Louisiana Third Circuit analyzed the U.S. Fifth Circuit's decision in *Sunbeam-Oster Co., Inc. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368 (5th Cir. 1996), where the "Plan" instituted suit against Whitehurst for reimbursement of the medical expenses it paid on his behalf. Therein, the trial court denied the Plan's claim under the Make Whole Doctrine, holding that the Plan could not recover through reimbursement or subrogation until the beneficiary was made whole through compensatory damages. *Id.*, 1370-72.

The Fifth Circuit in *Sunbeam-Oster* reversed the trial court in light of the language in the Plan's subrogation provision and concluded that the Plan was indeed entitled to full reimbursement by the beneficiary of the amounts the Plan paid on his behalf. Finding the language of the Plan's reimbursement and

subrogation provisions clear and unambiguous, the court did not address the issue of the appropriate default rule for reimbursement or subrogation in the absence of clear language in the Plan documents. *Id.*, 1375-76.

Confronted with a similar reimbursement provision, the Louisiana Second Circuit in *In re Roy*, 31,383 (La. App. 2 Cir. 1/20/99), 726 So.2d 1048, 1050 adopted the federal courts' practice of looking to the "traditional principles of trust and contract law" when resolving participants' rights under benefit plans. Following *Sunbeam-Oster* and *Roy*, the Louisiana Third Circuit in *Roberts* concluded that the proper method to interpret a benefit plan's subrogation provision was to construe it according to the language in the agreement and the expression of the parties' intent. Only in the absence of clear language and intent should courts look beyond the terms of the agreement and toward the gap fillers, such as the Make Whole doctrine, regarding the reimbursement and subrogation rights between the plan and the plan participant or beneficiary. *Roberts*, 743 So.2d at 735.

This Court had concluded in *Antin v. Temple*, 2006-2454 (La. App. 1 Cir. 12/21/07), (unpublished) 2007 WL 4480638, *3, that an insurer could not be subrogated into a claim for reimbursement until the accident victim had been fully compensated for his loss. In *Antin*, an insurer appealed a summary judgment in favor of the plaintiff and a peremptory exception raising the objection of no right of action filed by a third-party defendant. *Id.*, at *1. The definition of the Make Whole doctrine was mentioned in our discussion of the peremptory exception raising the objection of no right of action. The definition was given incidental to our primary analysis of the exception, in which we found the insurer had a right of action against the third-party defendant for a return of payment it had made on a subrogation claim, since at the time the payment was made, the plaintiff had not

been fully compensated for its loss. While we made reference to the Make Whole doctrine by citing *Roberts*, we did not include the applicability of the Make Whole doctrine to that particular case. See *Antin*, at *3.

*Antin* is distinguishable from *Roberts* in that in *Antin*, there was no reference to any contractual provisions regarding subrogation or reimbursement. In *Roberts*, the health care plan at issue contained clear contractual language regarding the insurer's subrogation rights. See *Roberts* at 732. *Antin* does follow *Roberts* to the extent that the Make Whole Doctrine is controlling in the absence of clear contractual provisions regarding the subrogation and reimbursement rights of the parties.

From our reading of the Subrogation and Reimbursement section in the OGB HMO plan in the instant case, we find the language clearly states that OGB is entitled to subrogation and reimbursement of the benefits paid to any person covered by the plan. Most notably, the plan states that "[t]hese rights apply regardless of whether such recovery is designated as payment for, but not limited to, pain and suffering, medical benefits, or other specified damages, even if he is not *made whole*." (Emphasis added). With this specific reference to the Make Whole Doctrine, OGB's intent to be fully reimbursed or subrogated into Mrs. Bayham's rights as the injured party are without question. Furthermore, the Subrogation and Reimbursement section was made part of a joint stipulation between the parties, and in another stipulation, Mrs. Bayham admitted to requesting the subrogation/reimbursement amount from OGB on February 4, 2013.

Due to Mrs. Bayham's contractual relationship with OGB as a person covered by the HMO plan, the plan's Subrogation and Reimbursement provision is controlling in this case, and the Make Whole doctrine does not apply. Typically, the manifest error standard of review would be the proper standard of review to

determine whether the district court's determination of the facts in the instant case were clearly wrong. See *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La. 1993).

However, the district court's oral reasons for judgment were as follows:

> This matter came before the court, I think maybe two or three weeks ago, where counsel argued and put on witnesses in reference to Mrs. Bayham's settlement that she received of [sic] over $155,000. And of that, [OGB] was claiming the reimbursement of some thirty-two something thousand dollars based off the Made Whole Doctrine. And the key thing for this court when I was studying this case and when we did the trial, I asked Mrs. Bayham in terms of what she considered herself as being made whole for this particular case. And she mentioned to the court that she wanted about $50,000.00. And in examining the evidence as both counsel has stipulated to, she received $155,000 in settlement minus some, I guess some attorneys fees and all of those things alike. Counsel, for the plaintiff argued that she was not made whole, because that's all the insurance that was available to her was the $150,000 plus the five thousand meds. But the court finds that she was made whole and [OGB] is due the reimbursement.

The district court's oral reasons suggest that it found Mrs. Bayham failed to prove she was not made whole pursuant to the Make Whole doctrine. However, based on our analysis of the standard of review, we find the Make Whole doctrine is not applicable to the instant case, and that it was unnecessary for the district court to determine whether Mrs. Bayham was made whole. It was therefore legal error for the district court to apply the Make Whole doctrine to the instant case.

Legal error exists upon the application of incorrect principles of law that deprives a party of substantial rights. When legal error has restricted or interdicted the fact-finding process, the law carves out an exception to the appellate "manifest error" or "clearly wrong" standard of review of a trial court or jury's finding of fact. *Panyanouvong v. T & H Convenience Store, Inc.*, 97-2727 (La. App. 1 Cir. 12/28/98), 734 So.2d 9, 11, writ denied, 99-1839 (La. 10/15/99), 748 So.2d 1148. In circumstances involving the existence of prejudicial legal errors at the trial level, if an otherwise intact record exists, the appellate court is required to review the

8

record *de novo* and determine the essential facts pursuant to the correct law by a preponderance of the evidence. *Id.* at 12.

In her second assignment of error, Mrs. Bayham avers that the district court made an incorrect legal determination. We agree, insofar as that the Make Whole doctrine should not have been applied. We disagree with her third and fourth assignments of error, insofar as they suggest the Make Whole doctrine, while applicable to the instance, was incorrectly applied. For the above reasons, we shall conduct a *de novo* review of the entire record.

Mrs. Bayham argues in her brief that all parties had agreed that one of the issues before the district court whether or not she had been "made whole" by her recovery. She directs this Court to the pre-trial order, under its section "contested issues of law," where one such issue listed is "whether Ms. Bayham has been 'made whole' by her $155,000.00 recovery." Such a statement does not mean the Make Whole doctrine is applicable to the instant case. The pre-trial order was not introduced as evidence in the instant case; moreover, none of the joint stipulations submitted to the district court state that the Make Whole doctrine was applicable in the instant case.

Mrs. Bayham also cites in her brief the Louisiana Commissioner of Insurance Directive Number 175 of January 8, 2003 (incorporating Regulation 78)[3], which states:

> It has long been the public policy of this state, as expressed in Louisiana jurisprudence, that subrogation provisions in insurance contracts cannot harm the insured. The same rule of public policy applies to reimbursement provisions in insurance contracts.

---

[3] Regulation 78, which was promulgated by the Louisiana Commissioner of Insurance and took effect on January 1, 2003, was incorporated into Chapter 101 of Title 37 of the Louisiana Administrative Code. The purpose of Regulation 78 is to streamline and expedite the insurance policy forms review process. La. Admin. Code 37:XIII.10101. It does not expressly codify the Make Whole doctrine.

. . . .

> The Commissioner will consider for approval language that clearly conveys to the insured that any right of recovery from third parties on the part of the insurer, whether by subrogation or reimbursement, is subordinate to the insured's right to be fully compensated for his damages; and that the insurer is obligated to share in the legal expenses incurred. The [C]omissioner will not approve policy language that excludes and/or reduces coverage for expenses incurred as a result of treatment of injury or sickness caused by the fault of a third party.

Despite the Commissioner's opinion on public policy regarding the language of insurance contracts, it is not the Commissioner who is the final, definitive arbiter for the interpretation and reconciliation of the Insurance Code and insurance policy language. That role is of course constitutionally assigned to the judiciary. *Wooley v. State Farm Fire and Cas. Ins. Co.*, 2005-1490 (La. App. 1 Cir. 2/10/06), 928 So.2d 618, 623. Additionally, the Louisiana Supreme Court has recognized that health and accident insurers can readily protect themselves by stipulating reimbursement rights or conventional subrogation in their policy contracts. *Martin v. Louisiana Farm Bureau Cas. Ins. Co.*, 94-0069 (La. 7/5/94), 638 So.2d 1067, 1070. Where the policy provides for reimbursement by the insured to the insurer and the insured settles with the third party tortfeasor, the insurer is entitled to collect from the benefits it paid. *Washington Nat. Ins. Co. v. Brown*, 94-1346 (La. App. 1 Cir. 4/7/95), 654 So.2d 724, 728, writ denied, 95-1699 (La. 10/13/95), 661 So.2d 497.

Based on our *de novo* review of the entire record, we agree with the result of the district court's decision. Mrs. Bayham had a contractual obligation to reimburse OGB for benefits it paid to her, and OGB had a contractual entitlement to subrogation and/or reimbursement of Mrs. Bayham's claim.[4] The language of

---

[4] We note that the concepts of reimbursement and subrogation, while similar, are different principles. Subrogation allows the insurer to stand in the shoes of the insured, whereas, with reimbursement, the insurer only has a right of repayment against the insured. *Old Republic Life*

10

the plan's Subrogation and Reimbursement section clearly grants both rights to OGB. See *Dufrene v. Willingham*, 97-1239 (La. App. 5 Cir. 10/28/98), 721 So.2d 1026, 1038, writ denied, 99-0032 (La. 3/12/99), 739 So.2d 212. OGB is therefore entitled to its award of $32,252.74, with judicial interest and costs.

## DECREE

The judgment of the Nineteenth Judicial District Court in favor of the defendant/appellee, the State of Louisiana through the Office of Group Benefits, is affirmed. All costs of this appeal are assessed to the plaintiff/appellant, Lynette Bayham.

**AFFIRMED.**

---

*Insurance Company v. TransWood Inc.*, 2016-0552 (La. App. 1 Cir. 6/2/17), 222 So.3d 995, 1006. Nevertheless, we find the plan's Subrogation and Reimbursement section grants OGB both rights from its clear language.

| LYNETTE BAYHAM AND ADAM BAYHAM | STATE OF LOUISIANA |
|---|---|
| VERSUS *Whipple, C.J., pro, [signature]* | COURT OF APPEAL |
| | FIRST CIRCUIT |
| STATE OF LOUISIANA, THROUGH THE OFFICE OF GROUP BENEFITS | NUMBER 2018 CA 1708 |

**WHIPPLE, C.J.**, concurring.

I agree with the majority opinion that the trial court's ruling should be affirmed. However, I do not join in the analysis of the issues as presented or the applicability of the cases cited in the opinion for the following reasons. At trial, the issue litigated was whether, on the evidence presented, plaintiff had been "made whole." In considering the matter and determining the merits of plaintiff's request for declaratory judgment, the parties and the trial court all proceeded with the understanding that the "Make Whole Doctrine" applied herein and resolved the issues on that basis alone. Nonetheless, I agree with the result reached.

In the matter before this court, Lynette Bayham filed a petition for declaratory judgment, seeking a judicial determination and declaration that she had not been made whole by her settlement totaling $155,000.00, and therefore did not owe reimbursement to the Office of Group Benefits (OGB) for medical expenses paid on her behalf in the amount of $32,252.74. Because Mrs. Bayham asserted that the settlement she received failed to compensate her for her total damages, she clearly had the burden of proving her claim by a preponderance of the evidence. Washington National Ins. Co. v. Brown, 94-1346 (La. App. 1st Cir. 4/7/95), 654 So. 2d 724, 729, writ denied, 95-1699 (La. 10/13/95), 661 So. 2d 497. In my view, she failed to do so.

Appellate courts generally review a trial court's decision to grant or deny a declaratory judgment under the "abuse of discretion" standard of review, while

1

factual findings made by the trial court are reviewed with the "manifest error" or "clearly wrong" standard. See Mai v. Floyd, 2005-2301 (La. App. 1st Cir. 12/6/06), 951 So. 2d 244, 245, writ denied, 2007-0581 (La. 5/4/07), 956 So. 2d 619.

In Washington National, this court found that a plaintiff failed to carry her burden of proof when, at trial, she presented testimony of her counsel and the third party tortfeasor's counsel in an attempt to show the amount of the settlement each counsel attributed to plaintiff's medical expenses, without presenting any medical testimony regarding plaintiff's injuries or even plaintiff's own testimony regarding her injuries. Id. at 729.

In Wallace v. Aetna Life and Casualty Insurance Company, 499 So. 2d 577 (La. App. 2nd Cir. 1986), plaintiff/insured brought an action to compel her group health insurer to pay her medical bills, penalties, and attorney's fees, claiming that the insurer was arbitrary and capricious in failing to pay her claim arising from an automobile accident. As a result of the accident, the plaintiff in Wallace underwent surgery for the removal of two discs from her cervical spine, and she suffered a twenty-five percent permanent disability. Plaintiff's medical bills totaled $22,505.95, and plaintiff settled her claims with the tortfeasor and the insurance companies for a total of $105,000.00. At the time of the accident, plaintiff was insured under a group health insurance policy which included a reimbursement clause. On appeal of an adverse ruling, the Second Circuit found that plaintiff had not proven that her total damages exceeded the amount she recovered in settlement, and concluded that the cases cited by plaintiff for the proposition that damages for a similar injury were in excess of $105,000.00 were inapposite, noting plaintiff did not show loss of ability to carry out employment, or

2

any factors tending to substantiate a higher award for general damages, or any proof regarding future medical expenses.

In the instant matter, Mrs. Bayham testified regarding her injury, generally describing her medical treatment prior to surgery as consisting of injections and therapy. She also testified that following surgery, her recovery took about six months and that she is about eighty percent healed as a result of this surgery. She concluded her testimony by stating that she felt there are many things that she can no longer do, including house chores or recreational activities, without pain or fear that she may dislodge her "hardware."

The remainder of the evidence relied upon by plaintiff was a joint stipulation that: she was involved in an accident, underwent medical treatment, and incurred $105,432.61 in medical expenses; had health insurance with OGB containing a subrogation and reimbursement clause; and OGB had paid or issued benefits for medical expenses totaling $32,252.74 in full satisfaction of the expenses incurred, such that she paid nothing; and that she negotiated a settlement and release of the tortfeasor and all insurance companies involved for a total of $155,000.00

In my view, Mrs. Bayham failed to carry her burden of proof. Given the limited evidence presented, and considering the above cited jurisprudence, I agree that the trial court did not err in finding that Mrs. Bayham failed to establish that she was relieved of her contractual obligation to reimburse OGB under the "Make Whole Doctrine." Accordingly, I agree with the trial court that Mrs. Bayham owed the reimbursement sought by OGB pursuant to the reimbursement clause in the contract.

For these reasons, I concur in the majority opinion.

3

| LYNETTE BAYHAM AND | STATE OF LOUISIANA |
|---|---|
| ADAM BAYHAM | |
| | COURT OF APPEAL |
| VERSUS | |
| | FIRST CIRCUIT |
| STATE OF LOUISIANA, THROUGH | |
| THE OFFICE OF GROUP BENEFITS | NUMBER 2018 CA 1708 |

**Welch, J. dissenting.**

I respectfully disagree with the majority's decision. The opinion's conclusion that the Office of Group Benefits ("OGB") is not subject to the "made whole" doctrine is legally incorrect and the cases relied upon therein in reaching that conclusion are legally inapplicable. In my opinion, the made whole doctrine or the doctrine of partial subrogation, which is rooted in La. C.C. art. 1826, is applicable and the trial court manifestly erred in concluding that the plaintiff was made whole.

First and foremost, I would point out that **Roberts, Sunbeam-Oster**, and Roy—the jurisprudence upon which the opinion relies—all involved plans that were governed by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"). Under ERISA, the federal courts, including the United States Supreme Court, have consistently held that the plain language of the plan controls and that under most circumstances, the plan language will pre-empt state law, including made whole or partial subrogation. However, OGB is not governed by ERISA because it is a "governmental plan." (See 29 U.S.C. §1003 (b)(1) and §1002(32) providing that ERISA does not apply to an employee benefit plan that is a "governmental plan," which is defined as "a plan established or maintained for its employees by the Government of the United States, by the

government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.") Since OGB is a plan established or maintained by Louisiana for its employees, it not governed by to ERISA, cases involving ERISA and the made whole doctrine are not applicable herein.

Furthermore, a health insurer's right to recover medical benefits it has paid arises only out of the contractual provisions of the policy. See **Martin v. Louisiana Farm Bureau Casualty Insurance Company**, 94-0069 (La. 7/5/94), 638 So. 2d 1067, 1069-1070. The insurer's contractual right can be one of subrogation or one of reimbursement only, depending on policy provisions. See **Barreca v. Cobb**, 95-1651 (La. 2/28/96), 668 So.2d 1129, 1131. Under subrogation, the insurer stands in its insured's shoes and has a right of action against the third party tortfeasor; under reimbursement, the insurer only has a right of action against its insured. *Id.*

Under both subrogation and reimbursement, the insurer can recover from the insured only if the insured recovers the full amount of his damages from the tortfeasor. See La. C.C. art. 1826; **Southern Farm Bureau Casualty Insurance Company v. Sonnier**, 406 So.2d 178, 179 (La. 1981); **Great West Casualty Company v. Manning**, 95-2359 (La. App. 1st Cir. 6/28/96), 687 So.2d 416. This is "partial subrogation" and sometimes known as the "make whole" doctrine, and it applies regardless of the wording of the contract. See *Id.*; **New Orleans Assets, L.L.C. v. Woodward**, 363 F.3d 372 (5th Cir. 2004); see also **Antin v. Temple**, 2006-2454 (La. App. 1st Cir. 12/21/07)(*unpublished*), 2007 WL 4480638.

Louisiana Commissioner of Insurance Directive Number 175 of January 8, 2003 (incorporating Regulation 78) makes it clear the Commissioner will not approve insurance policies that attempt to circumvent the "make whole" doctrine because such a provision is inconsistent with public policy that subrogation

provisions in insurance contracts cannot harm the insured. See **American Postal Workers Union AFL-CIO Health Plan v. Tippett**, 2011-881 (La. App. 3rd Cir. 12/7/11), 82 So.3d 379, 382-383.

Under ERISA, almost all employer and union health plans are preempted by ERISA. See **Arana v. Ochsner Health Plan, Inc.**, 338 F.3d 433 (5th Cir. 2003). However, as previously noted, governmental plans are not subject to ERISA. If an ERISA plan is "self-insured" or "self-funded" (*i.e.*, uses its members's contributions to pay out benefits, with an insurance company acting as plan administrator but not as insurer of the risk), then there is "conflict" preemption, which means no consideration is given to the Louisiana statutory and jurisprudential rules, *i.e.*, partial subrogation or the make whole doctrine. *Id.* ERISA contains no substantive rules for subrogation and/or reimbursement. Thus, the United States Supreme Court has held that plans may enforce their contractual reimbursement (or subrogation) provisions as written without regard to the "make whole" doctrine, which only applies if the plan is silent. See **US Airways, Inc. v. McCutchen**, 569 U.S. 88, 96-98, 133 S.Ct. 1537, 1545-1547 (2013). If the plan is "insured" (*i.e.*, underwritten and issued by an insurance company), ERISA "conflict" preemption does not apply and state law is "saved" from preemption to the extent it seeks to regulate insurance. **FMC Corp. v. Holliday**, 498 U.S. 52, 111 S. Ct. 403, 405 (1990). Stated differently, in such cases, state law provisions governing subrogation or the make whole doctrine, reimbursement, and other matters affecting benefits are clearly "saved" from "conflict" preemption. See **Benefit Recovery, Inc. v. Donelon**, 07-30414 (5th Cir. 3/11/08), 521 F.3d 326.

However, as previously noted, OGB is not subject to ERISA. OGB has promulgated a regulation, LAC 32:I.513, in which it asserts full subrogation and reimbursement rights over any and all proceeds from recovery from any judgment,

3

settlement or payment made to the participant, even if the plan participant has not been made whole. Notably, the substance of this regulation is essentially set forth in Ms. Bayham's OGB plan. While La. R.S. 22:971.1(A) exempts OGB from the authority of the Department of Insurance to regulate "the coordination of medical, surgical, and hospital benefits of a self-insurance plan with such benefits of any other insurance plan", it does not exempt OGB from the substantive provisions of the Insurance Code (Title 22). See **Capitol Anesthesia Group, P.A. v. Watson**, 2008-1159 (La. App. 3rd Cir. 3/4/09), 7 So.3d 51, writ denied, 2009-1088 (La. 9/18/09), 17 So.3d 974(OGB was liable for penalties and attorney's fees under La. R.S. 22:657 (now La. R.S. 22:1821)). In addition, La. R.S. 42:858 provides that relative to OGB that "[a]ll group insurance contracts effected pursuant hereto shall conform and be subject to all the provisions of any existing or future laws concerning group insurance." As such, neither OGB's regulations nor its plans can circumvent the "make whole" doctrine because such a provision would be inconsistent with public policy that subrogation provisions cannot harm the insured. Furthermore, OGB's authority to promulgate regulations comes from La. R.S. 42:802(B)(1), which provides that any such regulations "shall not be inconsistent with the provisions of this Chapter or other applicable laws." The Insurance Code and the Civil Code are such "other applicable laws."

Lastly, the "make whole" doctrine is grounded in the "partial subrogation" provision set forth in La. C.C. art. 1826(B) and the jurisprudence interpreting same—not the Insurance Code. The Insurance Commissioner's Directive 175 did not create the make whole doctrine; it simply reflected the longstanding public policy set forth in the Civil Code and jurisprudence, which applies to OGB even it is not subject to the Commissioner of Insurance's directive. Since the Civil Code and controlling jurisprudence trump regulations, OGB plans should be subject to the make "whole doctrine" despite LAC 32:I.513 or the language of the plan that

4

indicates otherwise. To find otherwise would be contrary to and violate the public policy of this state.

I would also point out that the issue of whether the made whole doctrine was applicable to OGB was not at issue before the trial court or in this appeal. Rather the issue was whether Ms. Bayham had been made whole. Since the trial court concluded that she had been made whole, OGB was entitled to reimbursement regardless of whether the made whole doctrine was applicable to OGB. While I believe the trial court's conclusion that she was made whole was manifestly erroneous, a determination that the plaintiff had been made whole essentially moots the issue addressed in the opinion as to whether OGB is subject to the made whole doctrine or whether the plan provisions are contrary to public policy. See **American Postal Workers Union AFL-CIO Health Plan v. Tippett**, 2011-881 (La. App. 3rd Cir. 12/7/11), 82 So.3d 379, 382-383.

Thus, I respectfully dissent.